PHELPS *v.* HARRIS.

1. A., although out of possession of certain lands in Mississippi, filed his bill un-
   der a statute of that State to remove a cloud upon his title to them. The
   question of title was directly raised and litigated by the parties. The court
   being of opinion that he was not entitled to any relief in the premises, dis-
   missed the bill. A. thereupon brought ejectment against B., the defendant
   in the former suit. *Held,* that the decree did not render the main contro-
   versy *res judicata,* as the court merely decided in effect that the bill would
   not lie.
2. A power to "sell and exchange" lands includes the power to make partition
   of them.
3. Where a testator devising land in Mississippi appointed a trustee with power
   "to dispose of all or any portion of it" that might fall to the devisees and
   "invest the proceeds in such manner as he might think proper for their
   benefit," this court, without laying down as a general rule that the words
   "dispose of" import a power to make partition, holds, in view of the opin-
   ion of the Supreme Court of Mississippi on the precise point in a case be-
   tween the same parties, although not announced under such conditions as
   made it *res judicata,* that the trustee had power to make partition.
4. It is not a valid objection to the partition that the trustee authorized to make
   it did not give his personal attention to it, but by agreement with one of
   the heirs demanding it, submitted it to disinterested persons, whose arbitra-
   ment he confirmed by executing the necessary indenture.

ERROR to the Circuit Court of the United States for the
Southern District of Mississippi.

The facts are fully stated in the opinion of the court.

*Mr. G. Gordon Adam,* for the plaintiffs in error.

*Mr. William L. Nugent, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was an action of ejectment for certain lands in Sharkie
County, Mississippi, brought by Alonzo J. Phelps and Mary B.
Phelps, his wife, the plaintiffs in error, against the defendants
in error, of whom George C. Harris and Helen S. Harris, his
wife, were admitted to defend as landlords, the other defen-
dants being their tenants in possession of the property in dis-
pute. The principal question in the case is, whether Henry
W. Vick, father of the plaintiff, Mary B. Phelps, and trustee
under a deed made by his wife, Sarah, in 1850, and also trustee
under the will of his brother, Grey Jenkins Vick, made in
1849, had authority under those instruments to make partition

of the lands given and devised therein to, and for the use of, his children. If he had such authority, and exercised it in a proper manner, the plaintiffs have no title, and the judgment must be affirmed. If he had not such authority, or did not exercise it effectually, the plaintiffs are entitled to recover either all the land in controversy or an undivided part thereof, and the judgment must be reversed. The facts of the case are set out in a special finding of the court below.

By the deed of Sarah Vick, referred to (in which her husband joined), she conveyed certain lands of which she was seised, to a trustee, to be held upon trust for her own separate use for life, with remainder to her children in fee; subject to certain powers of sale and exchange, and with the following proviso: —

"*Provided further*, that said trustee is to permit the said Henry W. Vick, as agent for said trustee, and as agent and trustee for said Sarah Vick, during her life, and as agent and trustee for her children after her death, to superintend, possess, manage, and control said property for the benefit of all concerned. Said Henry W. Vick is to have power to sell and exchange said property after the death of said Sarah Vick, and to apply the proceeds to the payment of the debt due to the trustees of the Bank of the United States; if such debt is paid, the proceeds of the sale to be reinvested, and be subject to the trusts of this deed."

The deed closes with this paragraph: —

"My intention is that said Henry W. Vick shall be regarded, for the purposes of this deed, not merely as an agent, but also a co-trustee, and I desire he may be required to give no security for the performance of his duties; and the said Jonathan Pearce [the trustee] is not, in any manner, to be responsible for the acts and conduct of said Henry W. Vick."

Sarah Vick died in 1850, leaving four children by her said husband; viz., Mary B. Vick (now said Mary B. Phelps), Henry G. Vick (under whom the defendants claim), Ann P. Vick, and George R. C. Vick, all of whom were then under age and unmarried.

By the will of Grey Jenkins Vick, referred to, the said Grey devised certain lands and other property to the grandchildren

of his father, and mother, among whom were the said children of Henry W. and Sarah Vick, and constituted the said Henry W. Vick trustee for his said children, giving him full power to dispose of all or any portion of said property which might fall to said children, and invest the proceeds in such manner as he might think proper for their benefit. After the said Grey's death, the said Henry W., as trustee of his said children, became seised in severalty by partition with the other devisees, of the proportion of lands devised to his said children, upon the trusts of the will.

In December, 1856, Henry G. Vick, the eldest of said four children of Henry W. and Sarah Vick, became of age, and soon after demanded from his father an account of his trust, and that his portion of the property held under said deed and will should be set off to him in severalty, and threatened to file a bill in equity for that purpose. They finally agreed to leave the matter to their attorneys, who decided that Henry G. Vick, having become of age, had the right to demand a division of the property, and to have his share set off to him; and the said attorneys signed a written instrument proposing the mode in which such division should be made, to wit, through the intervention of disinterested persons to be chosen by the parties. This plan was adopted; and Henry W. Vick and his son entered into a written agreement to that effect, designating the persons for making the partition, and binding themselves to stand to and abide by their decision. The arbitrators made an award by which the lands in controversy in this suit were allotted to said Henry G. Vick; an indenture was made between him and his father to carry the partition into effect; and he remained in possession of the lands set off to him until his death in May, 1859. It is this partition which is called in question by the plaintiffs.

Henry G. Vick died without issue, having first made a will by which he devised the lands in controversy, which were set off to him as aforesaid, to Helen S. Johnston, now said Helen S. Harris, who, after his death, went into possession thereof, and has ever since continued in possession.

The contention of the plaintiffs is, that Henry W. Vick had no authority, either under his wife's deed, or under the will of

Grey Jenkins Vick, to make partition of the lands, that the partition made with Henry G. Vick was void, that he acquired no separate estate thereby, and had no power to devise the lands specifically, and that the plaintiff, Mary B. Phelps, as sole surviving child of Henry W. and Sarah Vick (the others having died without issue), is entitled to recover the property.

In pursuit of the supposed rights of Mary B. Phelps, the plaintiffs, in February, 1871, exhibited a bill in the Chancery Court of Washington County, Mississippi (in which the lands in controversy were then situated), against the defendants, George C. Harris and Helen his wife, to remove the cloud from the supposed title of said Mary, raised by said partition and the will of Henry G. Vick. The defendants relied on the validity of said partition and will, and the question was fully contested. In November, 1873, a decree was made dismissing the bill. An appeal was taken, and the Supreme Court affirmed the decree. The plaintiffs then brought this action of ejectment; and one of the questions in the cause is, whether the decree in the chancery suit did not render the controversy *res judicata.* The plaintiffs contended that it did not, and that the only effect of the decree was, to decide that a bill to remove the cloud from the title would not lie, leaving the parties to all their legal rights in an action at law.

On this question the court below finds and concludes as follows:—

"And the court here now finds as a fact, from an inspection of the record in the said chancery cause, that the question as to the validity of the partition of the lands aforesaid, made by the said Henry W. Vick and the said Henry G. Vick under the deed of the said Sarah Vick and the will of said Grey J. Vick, and the power of said Henry W. Vick to make such partition, as well as the validity of the devise made by the said Henry W. Vick to the said Helen S. Harris, was directly raised by the bill in said cause and litigated between the parties; and that the said Supreme Court adjudged and decided that the said partition and devise were both valid and effectual, and that the said Henry W. Vick had full power and authority to make the said partition with the said Henry G. Vick. Which decision so made by said court was done to determine the juris-

diction of the court in said cause, and that said Supreme Court decided that the said Chancery Court had no jurisdiction thereof, and that if the said complainants therein have any right to the lands described therein, and which are the same for which this action of ejectment is brought, it is a legal title which must be enforced in an action at law."

The decree of the Chancery Court of Washington County, which was affirmed by the Supreme Court, was in the following words: "The court being of opinion that the complainants are not entitled to the relief prayed for in their bill, or to any relief in the premises from this court, it is therefore ordered, adjudged, and decreed that the said complainants' bill of complaint be and the same is dismissed, and that complainants pay the costs, &c."

The bill was filed under a statute of Mississippi, which declared as follows: "When any person, not the rightful owner of any real estate in this State shall have any deed or other evidence of title thereto, or which may cause doubt or suspicion in the title of the real owner, such real owner may file a bill in the Chancery Court of the county in which the real estate is situated, to have such deed or other evidence of title cancelled, and such cloud, doubt, or suspicion removed from said title, whether such real owner be in possession, or be threatened to be disturbed in his possession or not, &c." Rev. Stat. Miss., 1871, sect. 975, p. 191.

It is probable that the only effect of this statute was to enable owners of land not in possession to file a bill for the removal of clouds upon their title; since the ordinary jurisdiction of a court of chancery is sufficient to enable owners in possession to file such a bill. The questions, what constitutes such a cloud upon the title, and what character of title the complainant himself must have, in order to authorize a court of equity to assume jurisdiction of the case, are to be decided upon principles which have long been established in those courts. Prominent amongst these are, first, that the title or right of the complainant must be clear; and, secondly, that the pretended title or right which is alleged to be a cloud upon it, must not only be clearly invalid or inequitable, but must be such as may, either at the present or at a future time, embar-

rass the real owner in controverting it. For it is held that, where the complainant himself has no title, or a doubtful title, he cannot have this relief. "Those only," said Mr. Justice Grier, "who have a clear legal and equitable title to land connected with possession, have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title." *Orton* v. *Smith*, 18 How. 263; and see *Ward* v. *Chamberlain*, 2 Black, 430, 444; *West* v. *Schnebly*, 54 Ill. 523; *Huntington* v. *Allen*, 44 Miss. 654; *Stark* v. *Starrs*, 6 Wall. 402. And as to the defendant's title, if its validity is merely doubtful, it is more than a cloud, and he is entitled to have it tried by an action at law; and if it is invalid on its face, so that it can never be successfully maintained, it does not amount to a cloud, but may always be repelled by an action at law. *Overing* v. *Foote*, 43 N. Y. 290; *Meloy* v. *Dougherty*, 16 Wis. 269. Justice Story says: "Where the illegality of the agreement, deed, or other instrument appears upon the face of it, so that its nullity can admit of no doubt, the same reason for the interference of courts of equity, to direct it to be cancelled or delivered up, would not seem to apply; for in such a case, there can be no danger that the lapse of time may deprive the party of his full means of defence; nor can it, in a just sense, be said that such a paper can throw a cloud over his right or title, or diminish its security; nor is it capable of being used as a means of vexatious litigation, or serious injury." 2 Eq. Jur. sect. 700, a.

The Supreme Court of Mississippi, in their opinion in *Phelps* v. *Harris* (51 Miss. 789) a case between the present parties, say: "This jurisdiction of equity cannot properly be invoked to adjudicate upon the conflicting titles of parties to real estate. That would be to draw into a court of equity from the courts of law, the trial of ejectments. He who comes into a court of equity to get rid of a legal title, which is allowed to cast a shadow on his own title, must show clearly the validity of his own title, and the invalidity of his opponent's. *Banks* v. *Evans*, 10 S. & M. 35; *Huntington* v. *Allen*, 44 Miss. 662. Nor will equity set aside the legal title on a doubtful state of case. The complainant, to enable him to maintain such a suit, must be the real owner of the land, either in law or equity. Had the

defendant, Mrs. Harris, derived her title to the property in controversy even from a doubtful exercise of power, that of itself would be sufficient to preclude the complainants from a resort to equity, upon the well-settled principles above laid down. The proper forum to try titles to land is a court of law, and this jurisdiction cannot be withdrawn at pleasure, and transferred to a court of equity under the pretence of removing clouds from title" (p. 793). The court further concludes that this limited jurisdiction does not draw to it the right to take jurisdiction of the whole controversy in relation to the title to the land, right of possession, rents, &c., and thus usurp the jurisdiction belonging to the courts of law.

It is true that the court, in the former part of its opinion, discussed the question of the validity of the partition made by H. W. Vick and his son, and held that the partition was good, and that the title of Henry G. Vick to the lands in controversy was perfect; and, as a consequence, that the defendant's title was also perfect. But this discussion was entered into for the purpose of showing that the title of the defendant was not so devoid of validity as to constitute a mere cloud on the title; and consequently that the case was not one in which a court of equity could give relief.

We think, therefore, that the court below was right in determining that the decree in the equity case did not render the main controversy *res judicata*, but only decided that the bill would not lie; in other words, that it was not a proper case for a court of equity to determine the rights of the parties.

This brings us to the merits of the controversy, involving the question whether the partition made between Henry W. Vick and his son Henry G. Vick was valid. The plaintiffs contend that neither the deed of Sarah Vick, nor the will of Grey Jenkins Vick, gave to Henry W. Vick the power to make partition. The substance of those instruments, so far as relates to the question under consideration, has been recited. By the deed of Sarah Vick, the trustee therein named was directed to permit her husband, Henry W. Vick, as his agent, and as agent and trustee for herself and her children, "to superintend, possess, manage, and control said property for the benefit of all concerned." And it is added, "Said Henry W. Vick is to

have power to sell and exchange said property after the death of said Sarah Vick, and to apply the proceeds to the payment of the debt due to the trustees of the Bank of the United States ; if such debt is paid, the proceeds of the sale to be re-invested and be subject to the trusts of this deed." The codicil to the will of Grey Jenkins Vick, made Henry W. Vick a trustee for his, Henry W. Vick's, children, and gave him full power to dispose of all or any portion of the property devised by said will, which might fall to said Henry's children, and to invest the proceeds in such manner as he might think proper for their benefit. These were the express powers granted. Henry G. Vick, one of the children, came of age and demanded his portion separate from the rest. No question is made about his right to have such division made. Had Henry W. Vick no power to co-operate with him in making such a division ? That is the question. In the one case power is given to sell and exchange, superintend, possess, manage, and control for the benefit of all concerned ; in the other, full power to dispose of all or any portion, and invest the proceeds in any manner he might think proper for the children's benefit.

The question whether a naked power to sell or exchange implies a power to make partition is discussed by Sir Edward Sugden in his work on Powers. He says : "It is clear that a power to make partition of an estate will not authorize a sale or exchange of it ; but it has frequently been a question amongst conveyancers, whether the usual power of sale and exchange does not authorize a partition, and several partitions have been made by force of such powers under the direction of men of eminence. This point underwent considerable discussion on the title, which afterwards led to the case of *Abell* v. *Heathcote*, 4 Bro. C. C. 278 ; 2 Ves. Jun. 98. Mr. Fearne thought the power did authorize a partition, on the ground that a partition was in effect an exchange." Sugden adds, that the lords commissioners, Eyre, Ashurst, and Wilson, before whom the case was first heard, all thought that the power was to receive a liberal construction, as its object was to meliorate the estate. Eyre thought, that upon the word *sell*, the trustees should have a power of making partition, because it was in effect to take quite a new estate. Ashurst and Wilson thought, that what-

ever power might be derived from the word *sell*, the other words of the power, *convey for an equivalent* (which were also used), were sufficient. But they made no decision. Upon the cause coming before Lord Rosslyn, he determined that the power was. well executed, and founded his opinion upon its being in effect an exchange, as the consequences and effects of a partition and an exchange, as to the interests of the parties, are precisely the same. Sir Edward then notices the decision of Lord Eldon in the case of *McQueen* v. *Farquhar* (11 Ves. 467), that a power to *sell* simply, does not authorize a partition. He then adds : "Until the question shall receive further decision, it can scarcely be considered clear that a power to exchange will authorize a partition ;" but he proceeds to show that the decision in *Abell* v. *Heathcote* must have been based on the power to exchange, and not on any additional words. After referring to the case of *Attorney-General* v. *Hamilton* (1 Madd. 122), which was not decisive of the point, Sugden closes his discussion by saying : "But, as Lord Rosslyn has observed, this objection may be obviated where there is a power of sale. The undivided part of the estate may be sold, the trustees may receive the money and then lay it out in the purchase of the divided part, and although the sale is merely fictitious in order to effect the partition, it should seem that the transaction cannot be impeached." 2 Sugden, Powers, 479–482 (7th ed.), 1845.

We have quoted more largely from Sugden's work because of his great authority on questions of real estate and equity. It will be seen that he regards it as doubtful whether the power to make partition is included in the power to sell and exchange ;. but that partition may be effected indirectly under the power to sell, by actually selling the undivided interest, and purchasing a separate interest with the proceeds. The last edition of Sugden on Powers, published in 1861, has no change in the text on this subject.

In the case of *Doe* v. *Spencer* (2 Exch. Rep. 752), decided in 1848, Baron Rolfe, afterwards Lord Cranworth, speaking for the court, held, in accordance with Mr. Preston's note to Shepherd's Touchstone, p. 292, that two tenants in common might effect a partition by the exchange of a moiety in one part for a moiety in the other part ; and thence concluded that

a power of exchange given to trustees would be sufficient to enable them to effect a partition with their co-tenant in this way; although it was supposed that between more than two parties it could not be done. Vice-Chancellor Kindersly, in a subsequent case, reviewing this decision of the Court of Exchequer, well remarked, that if this can be done between two tenants in common, there seems to be no good reason why it may not be done between three or more.

The plaintiffs place great reliance on the case of *Brassey* v. *Chalmers* (16 Beav. 223), in which the master of the rolls held that a power to sell and dispose did not give the power to make partition; at least he refused to compel a purchaser to accept a conveyance where such a partition had been made. The case, however, was appealed, and the lords justices, without deciding the point, suggested the filing of a bill for partition, upon which the partition made might be confirmed, if found beneficial. This course was adopted, and resulted in a confirmation of the partition, and a decree confirming the title. 4 DeG. M. & G. 528; S. C., 31 Eng. L. & Eq. R. 115. So that this case left the point still undetermined. This was in 1853, and no notice of the case is taken in the last edition of Sugden on Powers, published in 1861.

A review of the cases and text-books on this subject was made by Vice-Chancellor Kindersly in 1856 in the case of *Bradshaw* v. *Fane* (2 Jur. N. S. 247), and the conclusion to which he came was, that it was still doubtful whether a power to sell and exchange would, or would not, authorize a partition. The same thing is stated in Lewin on Trusts and Trustees, 3d ed., p. 417.

In a recent case, however, *In re Frith and Osborne* (3 Ch. D. 618), decided in 1876 by Sir George Jessel, master of the rolls, it was distinctly adjudged, after a masterly review of all the previous authorities, that a power to sell and exchange does include the power to make partition. In delivering his judgment, the master of the rolls concludes as follows: "This is the state of the authorities. Lord St. Leonards says that it wants another decision to make it quite clear. I am willing to give the decision (supposing the doubt is not taken away by the decision of the Court of Exchequer followed by the vice-

chancellor, Kindersly) that the passage in the Touchstone [declaring that joint-tenants, tenants in common, and co-parceners cannot exchange the lands they do so hold, one with another, before they make partition] is not good law, and that you can have such an exchange, and if you can have such an exchange, why could not the power authorize the exchange of an undivided moiety in Whiteacre for another undivided moiety in Blackacre ? I decide that it does. We have conflicting opinions between what the judges said in *Doe* v. *Spencer* and what the vice-chancellor intimated his opinion to be. It is not necessary for me to decide that question. I must say, if I had to decide it, I should be inclined to follow the opinion of the vice-chancellor instead of the Court of Exchequer, for if it can be done as between two, I do not see why it could not be done as between more than two, but I have not to decide that question now."

It would seem, therefore, to be finally settled in England, that a power to sell and exchange does include the power to make partition, and that all doubt on the subject has been removed ; and we have not been referred to any decisions in this country which lead to a contrary result. This disposes of the case so far as the power under the deed of Sarah Vick is concerned.

The power given to the trustee by the codicil to the will of Grey Jenkins Vick is not quite so clear. The testator constituted Henry W. Vick a trustee for his children, and gave him full power to dispose of all or any portion of the property devised in the will that might fall to them, and invest the proceeds in such manner as he might think proper for their benefit. The expression " to dispose of " is very broad, and signifies more than " *to sell.*" Selling is but one mode of disposing of property. It is argued, however that the subsequent direction to *invest the proceeds* indicates that a sale was meant. But this does not necessarily follow. Proceeds are not necessarily money. This is also a word of great generality. Taking the words in their ordinary sense, a general power to dispose of land or real estate and to take in return therefor such proceeds as one thinks best, will include the power of disposing of them in exchange for other lands. It would be a disposal of the

lands parted with; and the lands received would be the proceeds. It is to be considered that the words used are contained in a will, to which the rules of construction applicable to ordinary speech are to be applied, except where technical terms are employed. In a well-considered book on the construction of wills, the rule of interpretation is laid down thus: 1. "In construing a will, the words and expressions used are to be taken in their *ordinary*, *proper*, and *grammatical* sense;—unless upon applying them to the facts of the case, an ambiguity or difficulty of construction, in the opinion of the court, arises; in which case the primary meaning of the words may be modified, extended, or abridged, and words and expressions supplied or rejected, in accordance with the presumed intention, so far as to remove or avoid the difficulty or ambiguity in question, but no farther." 2. "As a corollary to, or a part of, the last proposition,—*technical* words and expressions must be taken in their *technical* sense, unless a clear intention can be collected to use them in another sense, and that other can be ascertained." Hawkins, Construction of Wills, pp. 2, 4.

Now, whilst it may be true that when the words "disposed of" are used in connection with the word "sell," in the phrase "*to sell and dispose of*," they may often be construed to mean a disposal by sale; it does not necessarily follow that when power is given generally, and without qualification by associated words, to dispose of property, leaving the mode of disposition to the discretion of the agent, that the power should not extend to a disposal by barter or exchange, as well as to a disposal by sale. The word is *nomen generalissimum*, and standing by itself, without qualification, has no technical signification. Taking the whole clause in the codicil together, it is equivalent to an authority to dispose of the property as the trustee should deem most for the interest of his children; and this would include the power to barter or exchange as well as the power to sell.

*In re Frith and Osborne*, already cited, the terms of the power were "to *sell, dispose of*, convey, and assign the tenements, or any part thereof, by way of absolute sale for such a price in money, or by way of *exchange* for such equivalent in lands, as to the trustees should seem reasonable." The master

of the rolls, in analyzing this phraseology, said: "Of course the word ' sell ' refers to ' sale,' and the word ' exchange ' refers to ' dispose of,' and, therefore, it comes to this, whether a trust including a power to dispose of by way of exchange for an equivalent in other lands, authorizes trustees to dispose of the undivided moiety, which they are empowered to dispose of, for another undivided moiety." This quotation shows that the words " dispose of " are properly applied to an exchange.

If this construction of the language of the will is correct, the conclusion arrived at in relation to the power given by the deed of Sarah Vick is applicable to that given by the will; for, since it imports a power to exchange, it likewise imports a power to make partition.

But without assuming to lay down as a general rule the interpretation which we have suggested, in view of the clearly expressed opinion of the Supreme Court of Mississippi on the precise point, we feel justified in adopting it in this case. In disposing of the equity case on appeal, that court fully considered the power of the trustee, Henry W. Vick, both under the deed and under the will, and came to the unanimous conclusion that he had full power and authority to make the partition in question. As to the power under the will the court had no doubt, and as to that given by the deed they relied on the authority of *Abell* v. *Heathcote* and the opinions of Sugden and Fearne. And although this conclusion was not embraced in the decree so as to become *res judicata*, yet it was the ground on which the decree was rested. The precise question before the court was, whether the power exercised by the trustee was or was not clearly in excess of powers given by the instruments under which he assumed to act. The court looked into these instruments, and said, without hesitation: "The trustee acted entirely within the scope of his powers, and therefore it is not clear that he acted in excess of those powers, but the contrary." Whilst the point adjudicated was the conclusion that he had not clearly exceeded his powers, the reason for that conclusion, namely, the decided opinion that he had acted within the scope of his powers, was fairly within the inquiry presented for determination. The opinion is not absolutely binding, it is true, but it is entitled to great

weight on the question as to the actual law of Mississippi, and can hardly be called an extra-judicial opinion.

The objection that the trustee did not give his personal attention to the division of the property, but, by agreement with his son, submitted it to the arbitrament of disinterested persons, we do not regard as sufficient to invalidate the transaction. It was confirmed and carried into effect by his executing the requisite indenture for that purpose. Had the matter been carried into the courts a commission would have been appointed to make the partition, in whose appointment the trustee would have had less to say than he had in the selection of the persons mutually chosen by himself and his son. And it seems to us that the intervention of disinterested persons for appraising the property and making the allotment was judicious and proper. It is the course most commonly pursued by those who desire to make a division of property. It is laid down as a rule that " trustees may justify their administration of the trust fund by the instrumentality of others, where there exists a moral necessity for it ; " and this is said to arise " from the usage of mankind. If the trustee acts as prudently for the trust as he would have done for himself, and according to the usage of business ; as, if a trustee appoint rents to be paid to a banker at that time in credit, but who afterwards breaks, the trustee is not answerable; so in the employment of stewards and agents." Lewin on Trusts and Trustees, 3d ed., p. 293. Again: " The trustee cannot without responsibility delegate the general trust for sale ; but there seems to be no objection to the employment of agents by him, where such a course is conformable to the common usage of business, and the trustee acts as prudently for the *cestui que trust* as he would have done for himself." Id. p. 422.

But this is rather a question affecting the responsibility of the trustee than the validity of his acts. The trustee in this case had power to make partition. He did make partition, and carried it out by executing the proper conveyance between himself and his co-tenant. The partition is valid, although the trustee may be responsible for the manner in which it was effected by him.

*Decree affirmed.*