Mr. Justice Merrick
delivered the opinion of the court.
This is a bill filed by Caroline Marks and others against Wm. H. Main and others. The complainants aver themselves to be heirs-at-law of one Henry A. Jackson, who, many years ago, purchased a certain lot in the city of Washington, and after having erected a house upon it, and leaving an agent to collect the rents, went away, and remaining absent for many years, died, leaving heirs-at-law.
The complainants claim that they are these heirs-at-law. The defendants on their part claim title to the property by virtue of certain conveyances from other parties, and these other parties, they allege, are the true heirs-at-law of the party who died seized of the property.
In the progress of events, after the death of Jackson, the property went to ruin, and the possession became, in point *561 of fact, a vacant possession, just as many of the outlying lots of the city are without tenements upon them and without enclosures. In that state of affairs the complainants filed their bill against the .grantees of the other side, or parties claiming to be the heirs-at-law of the party who died possessed, for the purpose of setting aside their deeds as clouds upon the real title, the complainants alleging themselves to be the true and only heirs-at-law of the decedent, and that these deeds, professing to come from parties assuming to be the heirs-at-law, were utterly fraudulent and void; and the question in that state of case is, whether a court of chancery has jurisdiction to grant the relief as prayed; that is to say, to determine the controverted questions of heirship between the respective parties, and to vacate the conveyances under which the parties defendant claim from those whom they maintain to be the heirs-at-law.
The case being before the equity court, three judges successively, at different stages of the cause, pronounced against the claim of the complainants upon the fundamental ground that they were in no predicament to seek the aid of a court of equity. Not satisfied with the successive decisions of those three judges upon the fundamental point, the complainants have appealed to this court, and they are here confronted with the well-established doctrine of chancery, as derived from the English chancery jurisprudence, sustained as it is by the legislation in many of the States of this Union supplementing and providing for the defects of chancery jurisdiction, and by four well-considered decisions of the Supreme Court of the United States, given at intervals running through the term of forty-five years, all of those decisions maintaining, in the most emphatic terms, that, in the absence of legislation conferring a jurisdiction to determine and adjudge title to parties in such state of case, there is no remedy in chancery.
The first case of that sort is reported in 13th Peters, the case of Clark vs. Smith, which came up upon a statute of the State of Kentucky, passed in the year 1796. That stat *562 ute originated in the confusion of titles growing out of the land laws of the State of Virginia. It is matter of general history and judicial notoriety that the land laws of the State of Virginia were in the utmost confusion. Patents after patents were granted for the same tract of land, and the surveyors would, under a new patent, run over and overlap the lines of an old grant, so that there was inextricable confusion in the.land titles of the State of Kentucky, and parties who were in possession were unable to make any improvements, or to know where they stood in respect of their titles.
There being, under such circumstances, no means of redress in a court of law, the legislature of Kentucky passed a statute in the year 1796 authorizing any party who was in possession of lands, having already title thereto, to convene into a court of chancery any party holding under a junior patent, or any other claim of title whatsoever, for the purpose of examining into and determining the question of title, and to remove the cloud upon the title of the complainant so that he might enjoy his possessions and improve them without hazard.
A suit under that statute to quiet the title was instituted in the United States Circuit Court for the district of Kentucky. The judges were divided in their opinion as to the jurisdiction in chancery of a Federal tribunal to administer that statute, and the cause was certified up to the Supreme Court of the United States, so that the question was broadly presented, first, whether, under the general chancery jurisdiction, there was any power to administer such relief; and secondly, whether it could be administered by force of that statute. And the Supreme Court, therefore, had directly before them, first, whether such power inhered in the jurisdiction of a court of chancery, and secondly, if it did not, whether a faculty to adjudicate such a matter arose by virtue of the statute.
The Suj. reme Court held that while it was not within the ordinary faculty of a court of chancery, under the jurisdiction which we had derived from the mother country, to *563 administer such relief, yet that it was entirely competent for any State, for the protection of its citizens and the rights of property of its citizens, to say what should or what should not be a cloud upnn a title, and to authorize, by express enactment, a court of chancery to clear up such a cloud and to grant relief to the party who should be proved in the court of chancery to have the true title.
The Supreme Court held, inasmuch as there was an inherent jurisdiction in a court of chancery to quiet titles through a bill of peace, or a bill of quia timet to remove a cloud upon a title, that wherever the conditions to the exercise of that jurisdiction were modified by a State law, the jurisdiction being inherent, it was competent for the Federal chancery court to administer the relief, and that it was not the creation of an entirely new jurisdiction. ■ Had it been the creation of an entirely neiu jurisdiction and a neto faculty in the court of chancery, unknown to the faculties of a court of chancery derived from England, a State statute could not have enlarged the chancery powers of a Federal court; but the Federal court having inherent chancery powers to relieve against clouds upon titles, if the State legislation should please to say for the protection of its citizens, and according to its own proper policy that such and such a thing should be considered as a cloud, and that the court of chancery should remove it, that then the inherent faculty of a court of chancery to remove clouds attached upon that statutory enactment and that statutory predicament, and that it was competent so to grant relief.
But in this case they recognize distinctly that in the absence of any statutory power, the predicaments under which a court of chancery should exercise that jurisdiction did not exist.
Then followed in order the case in 6 Wallace, of Stark vs. Starrs, which was an appeal from the circuit court of the United States for the State of Oregon, where they had, under the compulsion of State policy, been obliged to adopt a similar statute. And in regard to that, Mr. Justice Field, speaking for the Supreme Court, at page 409, said:
*564 “ This is a suit in equity to quiet the title of the plaintiff to certain parcels of land situated in the city1- of Portland, in the State of Oregon. It is founded upon a statute of that State, which provides tliat cany person in possession of real property may maintain a suit in equity against another who claims an estate or interest therein adverse to him, for the purpose of determining such claim, estate or interest/ This statute confers a jurisdiction beyond that ordinarily exercised by courts of equitjr, to. afford relief in the quieting of title and possession of real property. By the ordinary jurisdiction of those courts a suit would not lie for that purpose, unless the possession of the plaintiff had been previously disturbed by legal proceedings on the part of the defendant, and the right of the plaintiff had been sustained by successive judgments in his favor.”
Here is a clear recognition that the general power of a court of chancery does not afford relief in quieting the title to real estate even where the party plaintiff is in possession, unless he has first vindicated his title and established it beyond peradventure, as against defendants, by successive actions at law. When that has been done the functions of what is called in chancery jurisdiction a bill of peace to quiet the title of a party in possession may be invoked.
Now, the statute of Oregon dispensed with the previous requirement of chancery jurisdiction to have the question of title adjudicated by the courts of law before the court would act. And in that case the Supreme Court maintained the jurisdiction, as in the former case, upon the ground that the predicaments for the exercise of the jurisdiction had been expanded by the statute, and having been expanded by the statute, the federal court could take cognizance of the subject, because the general subject of relieving clouds upon title was one which belonged'.to chancery jurisdiction and that was simply an expansion of the condition by removing certain conditions precedent to the exercise of jurisdiction, which removal did not confer a new or inherent jurisdiction in chancery previously non-existing. -And upon that ground they maintained the jurisdic *565 tion, but recognizing all tbe way through the general doctrine of chancery, that in the absence of legislation it was not competent for a court of chancery so to do.
The next case is to be found in 101 U. S., 370, the case of Phelps vs. Harris, where a similar statute had been passed by the State of Mississippi. And I read rather copiously from that decision, because it lays down the doctrine of the Supreme Court of the United States as to the general chancery jurisdiction, and also quotes with approbation the doctrine as announced by the Supreme Court of the State of Mississippi as to the general chancery jurisdiction in the absence of statutory provisions. In that case the court say:
“ The bill was filed under a statute of Mississippi, which declared as follows: ‘When any person, not the rightful owner of any real estate in this State, shall, have any deed or other evidence of title thereto, or which may cause doubt or suspicion in the title of the real owner, such real owner may file a bill in the chancery court of the county in which the real estate is situated to have such deed or other evidence of title cancelled, and such cloud, doubt or suspicion removed from said title, whether such real owner be in possession, or be threatened to be disturbed in his possession or not, &c.’”
Now, the Supreme Court go on to speak of that in this way:
“It is probable that the only effect of this statute was to enable owners of land not in possession to file a bill for the removal of clouds upon their title; since the ordinary jurisdiction of a court of chancery is sufficient to enable owners in possession to file such a bill.”
In this case the statute had authorized those not in possession to file a bill.
“ The questions what constitute such a cloud upon the title, and what character of title the complainant himself must have in order to authorize a court of equity to assume jurisdiction of the case, are to be decided upon principles which have long been established in those courts. Promi *566 nent among these are, first, that the title or right of the complainant must be clear; and, secondly, that the pretended title or right which is alleged to be a cloud upon it? must not only be clearly invalid, or inequitable, but must be such as may, either at the present or at a future time, embarrass the real owner in controverting it. For it is held, that where the complainant himself has no title, or a doubtful title, he cannot have this relief.”
“Those only,” said Justice Gf-rier, “who have a clear legal and equitable title to land connected with possession, have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title.”
The court then refers to Orton vs. Smith, 18th Howard, 263, and other cases, and continues:
“And as to the defendant’s title, if its validity is merely doubtful, it is more than a cloud, and he is entitled to have it tried by an action at law; and if it is invalid on its face, so that it can never be successfully maintained, it does not amount to a cloud, but may always be repelled by an action at law.”
Then proceeding further, the court say:
“The Supreme Court of Mississippi, in their opinion in Phelps vs. Harris, 51 Miss., 789, a case between the present parties, say: ‘This jurisdiction of equity cannot properly be invoked to adjudicate upon the conflicting titles of parties to real estate. That would be to draw into a court of equity from the courts of law the trial of ejectments. He who comes into a court of equity to get rid of a- legal title, which is allowed to cast a shadow on his own title, must show clearly the validity of his own title, and the invalidity of his opponent’s. Nor will equity set aside the legal title on a doubtful state of case. The complainant, to enable him to maintain such a suit must be the real owner of the land, either in law or equity. Had the defendant, Mrs. Harris, derived her title to the property in controversy even from a doubtful-exercise of power, that of itself would be sufficient to preclude the complainants from a resort to equity, upon the well-settled principles above laid down. * * * We think, *567 therefore, that the court below was right in determining that the decree, &g.’ ”
Now, there the court reiterate the same doctrine as before, and give validity to the jurisdiction by virtue of the statute of Mississippi dispensing with the previous conditions of title.
In the same manner the Supreme Court was called-to pass upon the question in 110 U. S., in the case of Holland vs. Challen, as brought before them by a statute of the State of Nebraska. I read from page 18:
“The statute of Nebraska enlarges the class of cases in which relief was formerly aiforded by a court of equity in quieting the title to real property. It authorizes the institution of legal proceedings not merely in cases where a bill of peace would lie, that is to establish the title of the plaintiff against numerous parties insisting upon the same right, or to obtain repose against repeated litigation of an unsuccessful claim by the same party, but also to prevent future litigation respecting the property,' by removing existing causes of controversy as to its title, and so embraces cases where a bill quia timet to remove a cloud upon the title would lie.”
I read now from page 20:
“A bill quia timet, or to remove a cloud upon the title of real estate, differed from a bill of peace in that it did not seek so much to put an end to vexatious litigation respecting the property as to prevent future litigation by removing existing causes of controversy' as to its title. It was brought in view of anticipated wrongs or mischiefs, and the jurisdiction of the court was invoked because the party feared future injury to.his rights and interests. To maintain a suit of this character it was generally necessary that the plaintiff should be in possession of the property, and except where the defendants were numerous, that his title should have been established at law or be founded on undisputed evidence or long continued possession.”
Then they go on to speak of the statute of Nebraska, and they vindicate the right of the Supreme Court to take juris *568 diction by virtue of the statute of Nebraska upon the same ground that had been first announced and maintained in the case of Clark against Smith, in 13 Peters, to which I have already adverted.
In the course of the opinion are certain other remarks at page 24, which are appropriate to be read:
“ The truth is that the ]urisdiction to relieve the holders of real property from vexatious claims to it, ■ casting a cloud upon their title, and thus disturbing them in its peaceable use and enjoyment is inherent in a court of equity. And though conditions to its exercise have, at different times, been prescribed by that court, both in England and in this country, they may at any time be changed or dispensed with by the legislature without impairing the general authority of the court.”
Here we see the ground upon which the Supreme Court rest the power of the Federal courts to administer chancery relief in respect of those clouds of title that they formerly had not jurisdiction over, because having jurisdiction over the general subject of the cloud, the court may recognize, in the administration of its chancery jurisdiction, the power of the State legislature to remove certain conditions to the exercise of the jurisdiction. The court continue":
“The equitable rights of parties in Nebraska, claiming the legal title to real property, are simply enlarged by its statute, not changed in character. And the language used by this court, speaking by Mr. Justice Bradley in the Broderick "Will Case, 21 Wall., 520, is appropriate here: ‘Whilst it is true that alterations in the jurisdiction of the State courts cannot affect the equitable jurisdiction of the Circuit Courts of the United States so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the circuit courts as well as by the courts of the State.’ And it may be affirmed of this case, what was said as probably true of that one, that it is ‘ a case in which an enlargement of equitable rights is effected, although presented in the form of a remedial proceeding.’ Indeed, as the court there observe, ‘much of *569 equitable jurisdiction consists of better and more effective remedies for attaining the rights of parties.’”
They do not put the case on any other than the statutory power, nor anywhere is there a semblance of the suggestion that they have a right to dispense, independently of statute, with the previously known conditions to the exercise of this jurisdiction of the court of chancery deriving its power and limitation of its jurisdiction from the faculties of a court of chancery as known in England, and as adopted by the Federal tribunals from the jurisdiction of chancery in England.
We have here always maintained the same view, and now the proposition is, that we shall change and depart from that jurisdiction. In the light of this legislation of numerous States of the Union, all of which recognize the inability of a court of chancery to administer such relief without statutory aid, and in the light of these adjudications of the Supreme Court of the United States affirming the exceptional power by virtue of the dispensations wrought through the statutory provisions of those States, and seeing that in the absence of it the jurisdiction did not exist, the inquiry is presented how can a bill of this sort be maintained in the courts of the District of Columbia? Where is the power, where is the authority in any recognized writer on equity jurisprudence, or in any well-considered adjudication by any chancery tribunal, for the assumption of such power where those conditions do not prevail ?
In this case the plaintiff's have done nothing to supply the want of those conditions for the assertion and vindication of the rights which they maintain here. It would be perfectly easy for them to do so. There is no ground, nothing in the necessities of the case, which justifies this court in breaking down the barriers and limitations which are well settled to the exercise of chancery jurisdiction, to wit, that before a court of chancery will render its aid to quiet title to real estate, there must have been a possession on the part of the person who seeks its aid, and that possession must have been threatened or assailed in some way. *570 If his title has been disputed, it must have been vindicated by repeated actions at law. So if he seeks to have a cloud removed he must also have been in possession, and the cloud must be with respect to something connected with his own title.
None of these conditions exist on the part of the complainants in this cause, and when you come to analyze the case you find it is the naked case of two parties, both of them being out of possession,and on e claiming that a court of chancery shall determine between them as to who is and who is not the heir-at-law of the last decedent. They seek to turn a court of chancery into a court of law for the purpose of determining a disputed question of title. But they say they are remediless without the assistance of chancery, because, not being in possession, they cannot go into a court of law.
The answer to that is very manifest. Let them take some steps towards putting themselves in that predicament which the court of chancery requires before an appeal to its jurisdiction can be had. Let them go and take possession and enclose the property, or if the attempt to take possession be resisted by another, and that other take possession and oust them, then they have a plain remedy in an action of ejectment or trespass, whichever they may please to elect; and there, and in that mode, they can try the question of title. But they must not, for the purposes of convenience, come into the court of chancery without resorting to all the legal means that lie at their hand before they invoke the extraordinary power of this tribunal.
The result of a different decision would he that this court would be charged with a speculative inquiry with respect to all the vacant lots in the city of Washington (and we know that in regard to many of them there are disputed titles), and the court of chancery would be turned into a court for the purpose of determining and quieting questions of title, and we should have to examine questions of law and equity and should be crowded beyond the capacity of a *571 court of equity if there were such a jurisdiction to entertain these controversies. .
It seems to ns, therefore, in the light of these authorities, and in the light of the judicial and legislative history of the country, and in the light of the numerous text books upon the subject, that there is nothing before us which justifies this application, and the decree of the court below, after, as I have said, three successive adjudications in the different stages of the case, should be affirmed and the bill dismissed.
It was not necessary for the purposes of this case that we should consider the operation of the act of Congress modifying the action of ejectment, and not being necessary we omit the expression of any opinion with regard to what the operation of that statute is.