**LAKE v. UNIVERSAL PICTURES CO., Inc. et al.**
No. 12087.

United States District Court
S. D. California, C. D.
Dec. 29, 1950.

Kenny & Morris, Los Angeles, Cal., for plaintiff.

Loeb & Loeb, Los Angeles, Cal., for defendants.

WESTOVER, District Judge.

Plaintiff herein wrote a story, entitled "Winchester, 73", and sold the story to the defendants. He entered into a written contract with defendants by which he assigned to them his rights in said story. The contract, in part, was contained in a letter written by Universal Pictures Company, Inc. to the plaintiff, which letter is as follows:

Los Angeles, California
February 14, 1946

"Mr. Stuart N. Lake
% Paul Kohner, Inc.
9169 Sunset Boulevard
Los Angeles 46, California

"Dear Mr. Lake:

"Your signature in the space below will confirm the following agreement made between us this date:

"Concurrently herewith you have delivered to us the following:

"(a) Assignment of all rights, dated as of even date, in connection with that certain story written by you and entitled "Winchester, 73."

"(b) Employment Agreement between you and us with respect to your services in the writing of a treatment based upon said story.

"It is agreed that in the event we cause said story to be published in magazine or book form, we shall pay to you a sum equal to one-half of the net proceeds actually received by us from such publication after deducting all commissions and other expenses incurred by us relative to such publication. In connection with such publica-

tion, we agree that you shall receive credit as the author of said story.

"Yours very truly,
Universal Pictures Company, Inc.
By Edward Muhl

    Assistant Secretary

Approved and Accepted:
Stuart N. Lake

(Stewart N. Lake)"

In his complaint plaintiff alleges defendants "caused to be published said story, 'Winchester, 73,' in the August, 1950 issue of 'Movie Story,' * * *" magazine; that plaintiff, in violation of his agreement with defendants, did not receive any credit or any mention whatsoever as the author of "Winchester, 73" and that defendants have failed to pay plaintiff any part of the "net proceeds" realized by them as the result of such publication.

Some time after defendants purchased the story, they engaged Robert L. Richards and Borden Chase to write a screen play based on the plaintiff's original story. The motion picture, "Winchester '73", was made from the screen play as prepared by Robert L. Richards and Borden Chase.

Three main issues are raised by defendants:

(1) That the story as published in "Movie Story" magazine was not plaintiff's story.

(2) That if it were plaintiff's story, defendants did not cause it to be published; and

(3) That defendants received no payment whatsoever for such publication, since the publication was for advertising purposes.

A perusal of the original story as sold by plaintiff to defendants and of the script as prepared by Robert L. Richards and Borden Chase indicates that the stories are substantially the same. Both are the stories of a gun—"One of a Thousand"; both have the same locale, and both use the same characters. It is well known by those familiar with the motion picture industry that very infrequently, if ever, does a producer use a story purchased for filming in its original form as prepared by

the writer. Producers evidently deem themselves better judges than writers are of what is necessary to make a successful motion picture. As a result, in nearly every instance the author's version is modified or changed.

█ In the handling of "Winchester '73" defendants followed the usual procedure of producers and changed the story as they saw fit to meet the requirements of their particular studio. Although there have been many changes, and characters have been realigned, nevertheless there is sufficient evidence to justify the Court's holding that the story as published in "Movie Story" was and is substantially plaintiff's story.

█ Defendants contend they did not cause such publication. Their affidavits indicate that defendants furnished to "Movie Story" magazine a copy of the final shooting script of "Winchester '73" as written by Richards and Chase, the authors of the screen play. These affidavits also disclose it is the custom of the motion picture industry to exploit and advertise motion pictures by publication of synopses in national motion picture magazines, such as "Movie Story." It seems to the Court there is sufficient evidence to justify the finding that defendants caused the publication.

█ It is defendants' further contention that the contract makes defendants liable only if the publication is in toto and, inasmuch as the publication is a synopsis, there has not been a publication. Again the Court must find against defendants' contention.

Defendants allege further that they have not received any payment from the magazine. Defendants evidently limit the definition of the term "net proceeds" to money payment only. The letter quoted above was written by Universal Pictures Company, Inc. to the plaintiff. The defendants chose the terminology of the letter. They could have, had they so desired, specified that "net proceeds" meant money. It would also have been possible for the defendants to have incorporated in the contract a definition of the word "published";

but defendants did not attempt to limit the meaning of the word "published" nor of the term "net proceeds."

██ As a general rule, a contract is to be more strictly construed against the party preparing it and using the specific terms than against the party who did not prepare the contract. Therefore, interpretation of the letter in this case must be construed more strictly against the defendant who prepared it than against plaintiff. Plaintiff argues that the term "net proceeds" is not limited to money but applies to any proceeds which defendants obtained and further contends that part of the proceeds obtained by defendants was advertising and publicity, and that advertising and publicity have a monetary value of which plaintiff is entitled to one-half, whatever the amount may be.

█ We do not believe the Court would be justified in holding that the term "net proceeds" is restricted to money, for "Proceeds are not necessarily money." Phelps v. Harris, 101 U.S. 370, at page 380, 25 L.Ed. 855. The Court is satisfied that the term "net proceeds" as used in the letter quoted above means any proceeds realized and, consequently, plaintiff is entitled to one-half of the value of advertising and publicity realized by defendants.

Plaintiff asserts that as he was not given credit for the story appearing in "Movie Story" magazine he has been damaged thereby. Defendants, as already pointed out, allege they did not cause the story to be published, but we have held contrary to that contention. Defendants further contend it was not plaintiff's story which was published but the story of the two writers employed by defendants. The Court also holds against the defendants on that controversy.

Defendants allege further that it was not the custom to give author-credit for such a story. Perusal of "Movie Story" for August, 1950, in which "Winchester '73" appeared, is illuminating. The following motion pictures are reviewed in that issue of the magazine: 1. The Glass Menagerie; 2. Treasure Island; 3. Stella; 4. The Furies; 5. The Asphalt Jungle;

6. Winchester '73; 7. Rogues of Sherwood Forest; 8. Once A Thief.

The following notations appear in these reviews:

1. The Glass Menagerie * * * "from the original stage play by Tennessee Williams."

2. Treasure Island * * * "from the novel by Robert Louis Stevenson."

3. Stella * * * "based on a novel by Doris Miles Disney."

4. The Furies * * * "screenplay by Charles Schnee; from a novel by Niven Busch."

5. The Asphalt Jungle * * * "screenplay by Ben Maddow and John Huston; from a novel by W. R. Burnett."

6. Winchester '73. "Produced by Aaron Rosenberg; directed by Anthony Mann; screenplay by Robert L. Richards and Borden Chase."

7. Rogues of Sherwood Forest " * * screenplay by George Bruce; story by Ralph Bettinson."

8. Once A Thief " * * * screenplay by Richard S. Conway; based on a story by Max Colpet and Hans Wilhelm."

Of the eight movies reviewed by "Movie Story" magazine, only in "Winchester '73" is author credit omitted. The other seven reviews give such credit.

Author credit may have been deleted in "Winchester '73" through oversight, but there is certainly evidence on which a finding may be made that the deletion was based on the theory that "Winchester '73", as reviewed, was not plaintiff's story. That has been the contention of the defendants in these proceedings; that is, in the rewriting, the story became that of the rewriters. Possibly that is the reason plaintiff is not given credit for authorship.

Defendants rely on the case of Field v. True Comics, Inc., D.C., 89 F.Supp. 611, 612. We are of the opinion the cited case does not help defendants in any particular. In the Field case, DiMaggio wrote an original book entitled " 'Lucky to be a Yankee' "; plaintiff obtained from DiMaggio "the sole and exclusive right to

publish, print and market in book" form the story entitled " 'Lucky to be a Yankee' ". Defendant published and placed on the market a magazine, entitled "True Comics", which contained a story of "Joe DiMaggio, the Yankee Clipper". The Court pointed out that the right obtained by the plaintiff to publish, print and market "in book form" a story " 'Lucky to be a Yankee' " did not include the publication of a comic magazine, particularly as two publishers of books submitted affidavits as to the meaning of the term "in book form", stating that such term did not include a publication like that in "True Comics." Also, the author appeared at the hearing and alleged that he had rights and claims against "True Comics" superior to those of the plaintiff.

 From the foregoing it is clearly evident plaintiff is entitled to a judgment against the defendants upon the question of liability only. The question of damages will be reserved for a further proceeding. Counsel for plaintiff is instructed to prepare Findings and Judgment in conformity with this memorandum.