**Merle F. PETERSON and Delores F. Peterson**

v.

**UNITED STATES of America.**

**No. PB C 83 234.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Oct. 31, 1985.

Ted Drake, Bridges, Young, Matthews, Holmes & Drake, Pine Bluff, Ark., Marion Gill, Gill & Johnson, Dumas, Ark., for plaintiffs.

Michael N. Wilcove, Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## ORDER

OVERTON, District Judge.

Plaintiffs instituted this action pursuant to 28 U.S.C. § 1346(a)(1) for the recovery of Internal Revenue taxes allegedly erroneously, illegally and improperly assessed and collected from them. Plaintiffs claim that the transactions they entered into do not constitute an industrial development bond under Section 103(b) of the Internal Revenue Code and, therefore, the interest paid to them is exempt from federal income taxation under the general provision of Section 103(a). Both parties agree that there are no genuine issues of material fact and that the case should be decided on the cross motions for summary judgment as the only remaining issue is whether plaintiffs' transactions constitute an industrial development bond.

The undisputed facts appear to be as follows:

In 1976, plaintiffs, the City of Dumas, Arkansas, and Belden Corporation entered into multi-faceted agreements. The Petersons sold property to the City of Dumas. At the same time, Dumas leased the property to Belden for twenty years. When the lease expired, Belden had the option to buy the property from Dumas for whatever amount of money Dumas still owed the Petersons on the sale. If Dumas owed nothing to the Petersons, Belden could buy the property for only $100.00 (Exhibit A, "Contract and Agreement", Article III, §§ 302 and 303; Exhibit B, "Lease and Agreement", Article XVIII, § 1801.) When Dumas bought the property, it gave the Petersons a promissory note providing for forty consecutive semi-annual installment payments. (Exhibit A, Article II, § 201, Exhibit C, "Contract", Article III, § 301.) The contract was a special obligation of Dumas, i.e., the city only had to use rent payments by Belden to make its payments to the Petersons. (Exhibit C, Article III, § 304.) The only security given to the Petersons was the property itself, and "all rights, revenue and income" which Dumas obtained from the property. (*Id.*, Section 305.)

Section 103(a) of the Internal Revenue Code of 1954 exempts from gross income interest on the obligations of a state or its political subdivisions. However, exempt obligations do not include an industrial development bond, which is defined as—

any obligation—

(A) which is issued as part of an issue all or a major portion of the proceeds of which are to be used directly or indirectly in any trade or business carried on by any person who is not an exempt person (within the meaning of paragraph (3)), and

(B) the payment of the principal or interest on which (under the terms of such obligation or any underlying arrangement) is, in whole or in major part—

(i) secured by any interest in property used or to be used in a trade or business or in payments in respect of such property, or

(ii) to be derived from payments in respect of property, or borrowed money, used or to be used in a trade or business.

Section 103(b)(2) of the Internal Revenue Code of 1954 (1976 ed.)

In support of its motion for summary judgment, the government contends that this transaction falls squarely within Section 103(b)(2). With respect to Section 103(b)(2)(A), the United States argues that Dumas issued an obligation to the Petersons, the proceeds of which were the land and building which were used by Belden Corporation, a non-exempt person, in its trade or business. Second, it is alleged that the City's obligation to the Petersons falls within the provisions of Section 103(b)(2)(B)(i) in that it was secured only by the property and the rent paid for use of the property. Finally, the only source from which Dumas was required to make payments to the Petersons was from income derived from the property Dumas was buying and leasing to Belden, thereby meeting the requirement of Section 103(b)(2)(B)(ii). The government states that plaintiffs' transaction is, therefore, an industrial development bond.

In response to the government's motion for summary judgment, and in support of their motion, plaintiffs challenge two specific points. First, the Petersons argue that Section 103(b) does not include land and buildings within its definition of "proceeds", and second, that the obligation of the City of Dumas was not "issued as part of an issue."

█ Plaintiffs offered no evidence or case law to support their theory that real and/or personal property was not to be included within the Section 103(b) definition of "proceeds" or that the definition was limited to cash money. The United States Supreme Court, in a case involving the construction of a will, noted that the term "proceeds" was one of "great generality" and held that it did not have to be cash, but could be land. *Phelps v. Harris*, 101 U.S. (11 Otto) 370, 380–381, 25 L.Ed. 855 (1879). The government cited cases in various contexts which have not limited the definition of proceeds to cash money. *See, Perkins v. Clinton State Bank*, 593 F.2d 327, 335–336 (8th Cir.1979) (in a case construing an escrow agreement, held that "proceeds" could be real estate notes);

*Mesa Farm Company v. United States,* 475 F.2d 1004 (9th Cir.1973) (in the context of the Bankruptcy Act, "proceeds" held to mean all property coming into the estate). The court concludes that the term "proceeds", as used in Section 103(b)(2)(A) is not limited to money, but can be real and/or personal property.

With respect to the contention that the obligation must be "issued as part of an issue", plaintiffs argue that Section 103(b) was enacted to apply to the traditional concept of third party financing where the state or political subdivision raises money from a third party or third parties by issuing a debt obligation to them and then using the money received to purchase or construct assets for the ultimate user. They claim that Congress did not intend to include within the definition of industrial development bond, a debt obligation given to a seller of real property.

However, plaintiffs offer no explanation for why Congress would apply Section 103(b) to the typical third party financing and not to their situation.

In explaining the purpose of Section 103(b) to plug a tax loophole, Senator Abraham Ribicoff noted that:

The most widespread and well-known abuse of the tax-exempt borrowing privilege is the practice of issuing so-called industrial development bonds. These bonds have permitted some of our largest corporations to issue tax-exempt bonds to the detriment of the best interests of both the Federal Government and the State and local governments.

A typical case might involve a municipality which agrees to issue bonds to finance the building of a factory for a private corporation. The Corporation in turn agrees to "rent" the factory for the exact amount needed to pay the interest and amortize the principal of the bonds. The bonds are generally revenue bonds payable only out of the rent and the municipality assumes no obligation on the bonds. Thus, we are really confronted with bonds of a private corporation. But, because the municipality allows its

name to appear on the bonds, it claims and passes on to the private corporation the full benefit of the lower interest rate. This rate stems from the Federal tax exemption of interest on legitimate State and local bonds.

These are truly corporate bonds and the local government's involvement is often little more than a sham.

113 Cong.Rec. 31612 (1967).

When the purpose of Section 103(b) is understood, it becomes clear that plaintiffs' transaction did not involve a municipal obligation under Section 103(a), but was purely and simply a corporate obligation. The parties used the City of Dumas to attempt to achieve tax exempt status on their interest income, but the City's involvement was merely as a conduit between plaintiffs and Belden Corporation. Congress intended to place limits on the Section 103(a) exemption by enacting Section 103(b). Plaintiffs cannot escape inclusion in the Section 103(b) limitation by arranging a financial scheme that thwarts its very purpose.

The plaintiffs' contract/lease arrangement is not prevented from being classified as an industrial development bond simply because Dumas did not utilize the typical third party financing bond offering. Nothing in the language of Section 103(b) requires such an offering. Rather, the plaintiffs' transaction fits squarely within the definition of industrial development bond in Section 103(b).

The Supreme Court has held that the definition of income is "sweeping" and should be "broadly construed in accordance with an obvious purpose to tax income comprehensively." The exemptions, however, "are specifically stated and should be viewed with restraint in the light of the same policy." *Commissioner v. Jacobson*, 336 U.S. 28, 49, 69 S.Ct. 358, 369, 93 L.Ed. 477 (1949). Furthermore, to "protect the revenue against artful devices," not only must Section 103(a) be narrowly construed, but the substance of the transaction, rather than the form, must control. *American*

*National Bank of Austin v. United States*, 421 F.2d 442, 451 (5th Cir.1970), *cert. denied* 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1971).

When the substance of plaintiffs' transaction is applied to the definition in Section 103(b), the conclusion is that it is an industrial development bond and the interest earned is not exempt.

The government's motion for summary judgment is granted.