UNITED STATES of America, Plaintiff,

v.

Robert Richardson KIMBALL, aka Robert Anthony Glynn, aka Robert Glyn Bland; Brian Peter Daniels; Bruce Emil Aitken; Edward Joel Seltzer; William Henry Harris; Stephen Paul Illenberger; David Lyle Boese, aka James Michael Shannon; and Thomas E. Tuttle, aka John Patrick Lyons, Defendants.

No. CR–N–87–55–HDM.

United States District Court,
D. Nevada.

March 30, 1989.

204 Mont. 146, 664 P.2d 890 (1983). *Wellman v.* *Wellman,* 205 Mont. 504, 668 P.2d 1060 (1983).

**1032**

William A. Maddox, U.S. Atty., Brian L. Sullivan, Asst. U.S. Atty., Reno, Nev., for plaintiff.

Richard Mazer, Jack Hill, San Francisco, Cal., David Chesnoff, Las Vegas, Nev., Donald M. Re, Los Angeles, Cal., Stephen Orr, San Antonio, Austin, Tex., Lawrence J. Semenza, Reno, Nev., for defendants.

## ORDER

McKIBBEN, District Judge.

The defendants have jointly moved to dismiss counts 2, 4 and 6 of the indictment. They contend the reporting and disclosure requirements of 31 U.S.C. §§ 5313 and 5324 and 31 C.F.R. § 103.22 (1981) violate their fifth amendment privilege against self-incrimination. The defendants also contend 18 U.S.C. § 1956(a)(1)(B)(ii) and (a)(2)(B)(ii) are unconstitutionally void for vagueness.

### Discussion

### I.

■ The scrutiny the court must give to the question of compelled disclosure which has an incriminating potential is "invariably a close one." *California v. Byers*, 402 U.S. 424, 427, 91 S.Ct. 1535, 1537, 29 L.Ed.2d 9 (1971) (plurality opinion). The court must carefully balance the Government's interest in disclosure and the individual's right against self-incrimination; "neither interest can be treated lightly." *Id.*

In assessing an individual's fifth amendment claim the court must determine whether compliance with the reporting requirement creates a "real and appreciable" danger of incrimination. *Marchetti v. United States*, 390 U.S. 39, 48, 88 S.Ct. 697, 702, 19 L.Ed.2d 889 (1968). If the court concludes the danger is not substan-

tial, the fifth amendment provides no protection. *Id.* The Ninth Circuit has articulated three factors in evaluating the danger of incrimination. First, does the reporting requirement involve an area "permeated with criminal statutes," *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965), or one which is essentially regulatory. Second, is the requirement directed at "a highly selective group inherently suspect of criminal activities," *id.*, or at the public generally. *Byers*, 402 U.S. at 430–31, 91 S.Ct. at 1539. Finally, would compliance with the requirement force an individual to provide information that "would surely prove a significant 'link in a chain' of evidence tending to establish his guilt." *Marchetti*, 390 U.S. at 48, 88 S.Ct. at 703; *United States v. Des Jardins*, 747 F.2d 499, 508 (9th Cir.1984), *modified in part on other grounds*, 772 F.2d 578 (1985).

First, the purpose of the domestic financial transaction reporting requirement of 31 U.S.C. § 5313 *et seq.* (the Act) is to require certain records to be kept which have a "high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." *See California Bankers Ass'n. v. Shultz*, 416 U.S. 21, 37, 94 S.Ct. 1494, 1505, 39 L.Ed.2d 812 (1974). It is true the reporting requirement is not directed at an area which is exclusively regulatory. Section 5324, along with 18 U.S.C. § 1956, was enacted as part of the Anti–Drug Abuse Act of 1986 under Subtitle H entitled "Money Laundering Control Act of 1986." However, this does not compel the conclusion that the reporting requirement involves a field "permeated with criminal statutes." It is not illegal to deposit or transfer more than $10,000 into a financial institution. The vast majority of such deposits are not illegal or considered to be connected with illegal activity.

In those cases where the Supreme Court invalidated reporting requirements on constitutional grounds, the statutes required disclosure of information that itself established the illegality. In *Albertson*, the provision of the Subversive Crime Control Act of 1950 required members of the Commu-

nist party to register their memberships. Since membership in the Communist party was a crime under that same act, the regulation itself required disclosure of the illegal activity and provided the critical element in the criminal prosecution. The same is true of *Marchetti*, where the tax statute requiring disclosure of gambling revenues would necessarily reveal information incriminating the defendant under state and federal substantive gambling offenses. By contrast, an indictment under § 1956 is only tangential to the filing or failure to file the transaction reports under 31 U.S.C. § 5313; the affiliation of § 1956 with § 5324 and the Anti–Drug Abuse Act does not transform the neutral reporting requirement of § 5313 into an act with which the defendants would have the duty to comply under pain of criminal prosecution to provide information which would "surely prove a significant 'link in a chain' of evidence tending to establish his guilt." *Marchetti*, 390 U.S. at 48, 88 S.Ct. at 703.

The second factor to consider is whether the reporting requirement is aimed at a "highly selective group inherently suspect of criminal activity." There is nothing inherently illegal about depositing amounts greater than $10,000 into financial institutions. The requirement to file a currency transaction report is directed at all who deposit more than $10,000 and not just those suspected of criminal activity. It is clear that one purpose of the currency transaction report is to identify large deposits to aid duly constituted law enforcement authorities in lawful investigations. H.R.Rep. No. 975, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin. News 4394, 4405. However, the mere filing of the currency transaction report carries with it minimal incrimination potential. I do not find that the reporting requirements here are directed at any inherently suspect group, nor am I persuaded there is a direct nexus between the reporting requirement and exposure to criminal sanctions. While the reporting requirements may reveal information which has the potential for providing the basis for exposing criminal activity, the deposit of $10,000 or more is not itself illegal, and the great majority of those who make such deposits are not connected with criminal activity.

Finally, the third factor the court must consider is whether the reporting requirement forces an individual to provide information which would prove a "significant link in a chain of evidence which would tend to establish guilt." The statistical information on the currency transaction report does not require the defendant to reveal incriminating evidence. The requirements are neutral on their face. *United States v. Dichne*, 612 F.2d 632, 640 (2d Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980). Any information obtained would be related only peripherally to criminal activity. Nothing in the currency transaction report asks the reporting party to disclose the source of the currency in the underlying financial transaction. The mere act of filing the report does not establish that the person conducting the financial transaction attempted to conceal the nature or source of the proceeds involved in the financial transaction.

The elements of proof of a § 1956 prosecution require a showing that the money used in the transaction be derived from specified unlawful activity and that the defendant, knowing the unlawful nature of the money, willingly conducted a financial transaction with the intent to evade designated reporting requirements. As the Government correctly notes, these elements help insure that the risk of incrimination from the mere act of filing a currency transaction report is minimal. The filing of the financial report does not establish conclusive evidence of the elements of the offenses charged in counts 2, 4 and 6 of the indictment. And furthermore, the defendants come under the Act because they chose to conduct a transaction involving currency in excess of $10,000. Had they elected to deal in sums less than $10,000, the Act would not have applied.

The court therefore concludes that the reporting requirement does not create an "appreciable danger of incrimination" prohibited by the fifth amendment. Conse-

quently, an extensive analysis of the public need for disclosure is unnecessary. As the court has previously observed, however, the purpose of the domestic financial transaction reporting requirements is to require records to be kept which have a "high degree of usefulness in criminal, tax or regulatory investigations or proceedings." *See Shultz,* 416 U.S. at 37, 94 S.Ct. at 1505. The non-prosecutorial interests underpinning the Act are substantial. *Dichne,* 612 F.2d at 638. Hence, I hold that the reporting requirements of 31 U.S.C. §§ 5313 and 5324 and 31 C.F.R. § 103.22 do not violate the defendants' fifth amendment privilege against self-incrimination.

## II.

■ The defendants next argue that 18 U.S.C. § 1956(a)(1)(B)(ii) and (a)(2)(B)(ii) [1] are unconstitutionally void for vagueness. Their contention is without merit.

Congress is presumed to enact laws which are constitutional. *United States v. Thompson,* 452 F.2d 1333, 1337 (D.C.Cir. 1971), *cert. denied,* 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972).

Thus, it is the defendants' burden to prove that the act is unconstitutional. The defendants are required to make a substantial showing that no set of circumstances exists under which the challenged act would be valid. *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

Due process requires that a criminal statute define the offense with sufficient clarity so that an ordinary person can understand what conduct is prohibited. *United States v. Murphy,* 809 F.2d 1427, 1431 (9th

Cir.1987). Section 1956(a)(1)(B)(ii) makes it unlawful for a person to engage in a financial transaction—as defined in the statute—which involves proceeds from a specified unlawful activity when he knows that the proceeds come from some form of felonious activity—as defined under state or federal law—and he participates in the transaction with the knowledge that the transaction is designed in whole or in part to avoid a transaction reporting requirement under either state or federal law. The defendants contend that the phrase "to avoid a transaction reporting requirement under Federal law" imposes criminal penalties on defendants for avoiding obligations under the statute by arranging their transactions "in such a way that those obligations never arise." The defendants contend the statute does not adequately notify an individual of circumstances which would make his avoidance of a financial transaction criminal; thus, the defendants argue the Government cannot establish the required specific intent to willfully violate the statute. Specifically, the defendants draw an analogy to the tax law and assert that the use of the word "avoid" instead of "evade" in the statute renders it unconstitutionally vague.

The defendants have failed to cite persuasive authority for this proposition. There is nothing in the legislative history of this statute which compels a conclusion that Congress intended that the word "avoid" not be considered as synonymous with "evade," which is the common meaning of the word.[2]

Additionally, the following elements are required for a violation of § 1956: 1) that the money used in the transaction be de-

---

**1.** Section 1956 reads in pertinent part as follows:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity— [or]

(2) Whoever transports or attempts to transport a monetary instrument for funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

(B) knowing that the transaction is designed in whole or in part—

(ii) to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

**2.** *See e.g., Random House Dictionary of the English Language* at 103, 493 (unabridged ed. 1981) (defining "avoid" as meaning "evade"; defining "evade" as meaning "to avoid doing or fulfilling"); *Black's Law Dictionary* 124 (5th ed. 1979) (defining "avoid" as "to evade").

rived from specified unlawful activity, 2) that the defendant had knowledge of the unlawful nature of the money, 3) that the defendant willingly conducted a financial transaction, and 4) that he did so with the intent to evade the reporting requirements. The statute contains both the necessary elements of willfullness and criminal intent. Section 1956 requires knowledge that the property involved in the financial transaction represents the proceeds of some form of unlawful activity. The section requires for conviction that the defendant know the transaction in which he is involved is designed to avoid a transaction reporting requirement. The language of the statute explicitly sets forth the elements of the offense as described above. It therefore affords law enforcement officials sufficient "minimal guidelines" to prevent "arbitrary enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

The defendants here have not met the substantial burden of showing that the statute is unconstitutional. The court concludes the provisions of 18 U.S.C. § 1956(a)(1)(B)(ii) and (a)(2)(B)(ii) are not unconstitutionally vague.

The defendants' joint motion to dismiss counts 2, 4, and 6 (# 463) is DENIED.

It is so ORDERED.