**UNITED STATES of America, Plaintiff,**

v.

**Herb Alberto ORTIZ, Defendant.**

**No. 90–116–CR.**

United States District Court,
S.D. Florida.

June 1, 1990.

David Mandel, Asst. U.S. Atty., S.D. Fla., Miami, Fla., for plaintiff.

William M. Moran, Miami, Fla., for defendant.

## ORDER

MARCUS, District Judge.

THIS CAUSE has come before the Court upon Defendant Herb Alberto Ortiz's ("Ortiz") Motion to Dismiss Count I of a two-count Indictment. The motion is based largely on the contention that Title 18 U.S.C. § 1956(a)(2)(B)(ii) ("Money Laundering Control Act") is unconstitutionally vague and violates the Fifth Amendment

Due Process Clause of the Constitution and therefore that Count I is fatally defective. Defendant also maintains that he may not be charged properly under both Counts I and II of the Indictment. For the reasons outlined at some length below, Defendant's Motion to Dismiss is hereby DENIED.

This action arose out of an Indictment returned by a grand jury sitting in the Southern District of Florida on February 15, 1990. The Indictment charges that on or about February 6, 1990, the Defendant Ortiz attempted to transport some $497,000 in United States currency from Miami, Florida to a place outside the United States. Count I alleges that Ortiz knowingly and willfully attempted to transport the currency knowing that the currency represented the proceeds of some form of unlawful activity, and knowing that such transportation was designed in whole or in part to avoid a transaction reporting requirement under Federal law. These allegations are said to constitute a violation of 18 U.S.C. § 1956(a)(2)(B)(ii) [1]. Count II alleges that the Defendant Ortiz knowingly and willfully failed to file a United States Customs Form 4790, Report of International Transportation of Currency or Monetary Instruments ("CMIR report") in connection with the alleged attempt to transport in excess of $10,000 in United States Currency.

The Government has proffered the following: On February 6, 1990, Ortiz delivered a water heater filled with $497,170 in United States currency to ARCA Airlines in Miami, Florida. Law enforcement officials intercepted a box containing the water heater shortly before it was to be shipped to Colombia. Upon arrest by the authorities, the Defendant allegedly acknowledged

---

1. 18 U.S.C. § 1956 provides in pertinent part: (2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

  (A) with the intent to promote the carrying on of specified unlawful activity; or

  (B) knowing that the monetary instrument or funds involved in the transportation represent the proceeds of some form of unlawful activity and knowing that such transportation is designed in whole or in part—

(ii) to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of $500,000 or twice the value of the monetary instrument or funds involved in the transportation, whichever is greater, or imprisonment for not more than twenty years, or both.

that he was aware that the money contained in the water heater represented proceeds from illegal drug sales.

The Supreme Court has viewed the void-for-vagueness doctrine as encompassing two requirements. First, the doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." Second, the doctrine mandates that a criminal statute be defined "in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). *See also Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982); *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

While both prongs of the void-for-vagueness doctrine are important, the Supreme Court has recognized the requirement that a statute establish minimum guidelines to govern law enforcement as the more important aspect of the doctrine. *See also Kolender,* 461 U.S. at 358, 103 S.Ct. at 1858; *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974). The High Court has observed that "[w]here the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Id. (quoting Smith,* 415 U.S. at 575, 94 S.Ct. at 1248).

■ In determining whether a criminal statute is void for vagueness, a court manifestly has a duty to scrutinize the statute "rigorously in order to protect unsuspecting citizens from being ensnared by ambiguous statutory language." *United States v. Insco,* 496 F.2d 204, 206 (5th Cir.1974). However, when a court engages in this rigorous scrutiny, it must bear in mind that Congress is "[c]ondemned to the use of words" when drafting criminal statutes. Moreover, "[w]e can never expect mathematical certainty from our language." *Grayned,* 408 U.S. at 110, 92 S.Ct. at 2300.

To this effect, the Supreme Court wrote in *Boyce Motor Lines v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330–31, 96 L.Ed. 367 (1952):

A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions.

It is a rare statute indeed as to which "the fertile legal 'imagination [cannot] conjure up hypothetical cases in which the meaning of [disputed] terms will be in nice question'" *Grayned,* 408 U.S. at 110, n. 15, 92 S.Ct. at 2300, n. 15 (second bracket in original) *(quoting American Communications Association v. Douds,* 339 U.S. 382, 412, 70 S.Ct. 674, 690, 94 L.Ed. 925 (1950)). Consequently, in evaluating a contested criminal statute "no more than a reasonable degree of certainty can be demanded." *Boyce Motor Lines,* 342 U.S. at 340, 72 S.Ct. at 331. A Court may not invalidate application of a statute under the void-for-vagueness doctrine simply because there is some degree of ambiguity in the provisions of the statute.

■ In addition to the principle that a court may not demand absolute unambiguity in evaluating a criminal statute under the void-for-vagueness doctrine, we are guided by the principle that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). *See also United States v. Powell,* 423 U.S. 87, 92–93, 96 S.Ct. 316, 319–20, 46 L.Ed.2d 228 (1975). In *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987), the Supreme Court pointed to the great difficulty inher-

ent in mounting a facial challenge to a statute which does not implicate First Amendment interests:

> A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid. The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment. (*citing Schall v. Martin,* 467 U.S. 253, 269, n. 18, 104 S.Ct. 2403, [2412 n. 18] 81 L.Ed.2d 207 (1984)).

Thus, in the instant case, where no First Amendment interests are implicated, we must examine the Defendant's conduct "before analyzing other hypothetical applications of the law." *Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. at 1191. If the alleged conduct of the Defendant is within the realm of conduct clearly proscribed by the Money Laundering Control Act, the Defendant "cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* See also *United States v. Harriss,* 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1953) ("if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise"). In short, in determining the Defendant's challenge to the provision of the Money Laundering Control Act, the question is whether the provision is unreasonably vague as specifically applied to the conduct allegedly engaged in by the Defendant.

In our view, the statute is clearly not void for vagueness as applied to the alleged activities of the Defendant. The text of 18 U.S.C. § 1956(a)(2)(B)(ii) contains three separate elements. First, the defendant must transport, transmit or transfer, or attempt to transport, transmit or transfer monetary funds or a monetary instrument from the United States to a place outside the United States. Second, the defendant must have knowledge that the monetary funds involved in the transportation represents the proceeds of some form of unlawful activity. Finally, the defendant must have knowledge that such transportation was intended to avoid a transaction reporting requirement under State or Federal law.

We can find no ambiguity in the application of the foregoing statutory elements to the allegations which have been presented by the Government. To begin, the Government has alleged that the Defendant delivered currency to an airline for transportation on a flight destined for a place outside of the United States. Next, the Government has proffered the claim that the Defendant acknowledged his awareness of the fact that the currency being transported represented proceeds of illicit drug sales. Finally, the allegations that no CMIR was filed and the circumstances of the alleged attempt to transport clearly indicate that the Government has alleged that the Defendant knowingly attempted to avoid a transaction reporting requirement under State or Federal law within the meaning of the statute. Our analysis of the statutory language comports with the district court's analysis in *United States v. Kimball,* 711 F.Supp. 1031, 1034–1035 (D.Nev.1989), the only case we can find which has evaluated a void-for-vagueness challenge to 18 U.S.C. § 1956(a)(1)(B)(ii). In *Kimball,* the Court found that the statutory language defines the elements necessary to constitute a violation of the statute with sufficient clarity. Moreover, it found that the statute "affords law enforcement officials sufficient 'minimal guidelines' to prevent 'arbitrary enforcement'." [2] *Id.* at 1035 (*quoting Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)).

---

**2.** The *Kimball* Court evaluated the void-for-vagueness challenge as a challenge to the facial validity of §§ 1956(a)(1)(B)(ii) and 1956(a)(2)(B)(ii). It did not attempt to evaluate the statute as applied to the particularized facts of the case. While we have addressed the issue as it applies to the facts of the instant case, our findings with regard to the language of the statute are wholly consonant with those reached by the *Kimball* Court.

In his Memorandum of Law, the Defendant advances several arguments in support of his void-for-vagueness claim. First he contends that the knowledge requirement contained in the statute which requires that the defendant know that the monetary instrument or funds involved in the transportation represents the proceeds of some form of unlawful activity (hereinafter "first knowledge requirement") is unconstitutionally vague. In our view, this contention is without merit. The requirement that the transporter know that the monetary instrument or funds being transported are the proceeds of unlawful activity is not unconstitutionally vague either on its face or as applied to the facts of this case.

The Supreme Court has frequently pointed to the existence of a scienter requirement as mitigating against a finding that a statute is void for vagueness. *See e.g. Hoffman Estates*, 455 U.S. at 499, 102 S.Ct. at 1193; *Boyce Motor Lines*, 342 U.S. at 342, 72 S.Ct. at 331; *Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979). In *Boyce Motor Lines*, the charges against the defendant involved a regulation promulgated by the Interstate Commerce Commission. The regulation provided that:

> Drivers of motor vehicles transporting any explosive, inflammable liquid, inflammable compressed gas, or poisonous gas shall avoid, so far as practicable, and, where feasible, by prearrangement of routes, driving into or through congested thoroughfares, places where crowds are assembled, street car tracks, tunnels, viaducts, and dangerous crossings. *See Boyce Motor Lines*, 342 U.S. at 338–39, 72 S.Ct. at 329–30.

The defendant had been charged with violating a statute which provided that " 'whoever knowingly violates' the [foregoing] Regulation shall be subject to fine or imprisonment or both." *Id.* at 339, 72 S.Ct. at 330 (*quoting* 18 U.S.C. § 835). The defendant argued that the language of the regulation was so vague as to render enforcement of the statute unconstitutional. In holding that the statute was not void for vagueness, the Supreme Court observed

that the terms contained in the regulation have common meaning. Additionally, the Court noted that:

> The statute punishes only those who knowingly violate the Regulation. This requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the Regulation would be so unfair that it must be held invalid. *Id.* at 342, 72 S.Ct. at 331.

The statute at issue in the instant case contains a similar scienter requirement to that contained in the statute at issue in *Boyce Motor Lines*. In order to be convicted of violating the first element of 1956(a)(2)(B), a defendant must not only attempt to transport or transport money derived from unlawful activity from the United States to a foreign country but must also have knowledge that the money was derived from unlawful activity. Rather than contributing to any ambiguity contained in the statute, this scienter requirement has the effect of mitigating any ambiguity contained in the rest of the statute.

We are unpersuaded by Defendant's argument that the meaning of the first knowledge requirement is not reasonably discernable. Title 18 U.S.C. § 1956(c)(1) states that:

> the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity which constitutes a felony under State or Federal law, regardless of whether or not such activity is specified in paragraph (7);

This definition suggests that the statute is applicable to the transportation of the proceeds of any felonious activity where the defendant has knowledge that the proceeds are derived from felonious activity. In view of the definition provided in the statute, we fail to see any ambiguity in the first knowledge requirement. Moreover, in

the instant case, the Government specifically alleges that the Defendant acknowledged that he was aware of the fact that the currency being transported represented the proceeds of drug sales. In light of these allegations, there is no question that the alleged activities of the Defendant fall squarely within the coverage of the first knowledge requirement.[3]

■■■ Next the Defendant complains of the use of the purportedly vague term "proceeds" within the statute. The Defendant's Memorandum gives myriad examples of differing statutory definitions of "proceeds" in an attempt to demonstrate that the term as used in the statute is unconstitutionally vague. When a criminal statute fails to define a term, the court must assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). Because the term "proceeds" is not defined within the Money Laundering Control Act, we must discern the common meaning of the term. The common dictionary definition of the word "proceeds" is the following:

> [s]omething that results or accrues; the total amount derived from a sale or other transaction ...; [or] the profits or returns from a sale, investment, etc. *The Random House Dictionary of the English Language,* at 1542 (2d ed. unabridged 1987)

Similarly, *Black's Law Dictionary,* at 1084 (5th ed. 1979) defines "proceeds" in the following manner:

> Issues; income, yield; receipts; produce; money or articles or other thing of value arising or obtained by the sale of property; the sum, amount or value of property sold or converted into money or into other property. Proceeds does not necessarily mean only cash or money. That

which results, proceeds, or accrues from some possession or transaction. The funds received from disposition of assets or from the issue of securities.

Furthermore, the Supreme Court has held that "proceeds are not necessarily money. [Proceeds] is also a word of great generality." *Phelps v. Harris,* 101 U.S. 370, 380, 25 L.Ed. 855 (1879). Moreover, we reiterate: a statute is not facially void for vagueness simply because there might be marginal situations in which the statutory meaning would be questionable.

In our view, the term "proceeds" has a commonly accepted meaning, and additionally, is clear in the context of the instant case. The Government has alleged that the Defendant said he had knowledge that the money which he attempted to transport constituted the proceeds of illicit drug sales. We believe that "[i]ndividuals who engage in financial transactions concealing the narcotics source of the money are clearly put on notice by the unambiguous wording of Section 1956." *United States v. Mainieri,* 691 F.Supp. 1394, 1397 (S.D.Fla. 1988).

■■■ The Defendant presents several "straw man" arguments in an attempt to demonstrate that the term is vague in the context of circumstances which are not present in the instant case. These arguments are simply irrelevant to the determination of the statute's validity under the particularized facts of this case. We are convinced that the ordinary meaning of the term "proceeds" encompasses the currency which the Defendant allegedly attempted to transport.

■■■ We are similarly unpersuaded by Defendant's contention that the term "involved" as used in § 1956(a)(2)(B) is unconstitutionally vague. There can be no doubt

---

**3.** Defendant has argued that the purported vagueness of the first knowledge requirement is enhanced by the fact that the "willful blindness" doctrine may be applied to prosecutions under the statute. The concept is well established throughout criminal law that the term "knowingly" when used in criminal statutes "is not limited to positive knowledge, but includes the state of mind of one who does not possess

positive knowledge only because he consciously avoided it." *United States v. Jewell,* 532 F.2d 697, 702 (9th Cir.1976). *See also United States v. Peddle,* 821 F.2d 1521, 1524 (11th Cir.1987); *United States v. Restrepo–Granda,* 575 F.2d 524, 528–29 (5th Cir.1978). We find no basis for the contention that the application of this standard principle of statutory construction renders the statute unconstitutionally vague.

that the term "involved" as applied to this case refers to the currency which is alleged to have constituted the proceeds of drug sales and to have been the subject of Defendant's attempted transport out of the United States.

Next the Defendant argues that the statute is unconstitutionally vague because it purportedly incorporates an element of "transferred intent." This contention is without merit. The application of the statute has nothing to do with the concept of "transferred intent." The Defendant suggests that the statute allows for a defendant to be convicted based on a mere assertion that someone—not necessarily the defendant—designed the transportation to avoid a transaction reporting requirement. However, in order to be guilty under the statute, a defendant *must* have knowledge that the currency or monetary instruments derive from illegal activity and that the transportation is designed to avoid a transaction reporting requirement. This knowledge must be personal to the defendant. There is no way in which a defendant may be convicted of a substantive violation of the statute based solely upon the intent of another person. Even if someone other than the defendant were to have designed the transportation to avoid a transaction requirement, the defendant still must manifest the intent to accomplish the physical transportation of the currency. In short, we fail to see what relevance the concept of transferred intent has to the operation of this statute.

An additional contention advanced by the Defendant is that the statute is unconstitutional because it purportedly lacks a *mens rea* requirement. This too is groundless. The Defendant attempts to analogize the statute to other statutes which do not contain a *mens rea* requirement. The Supreme Court has upheld certain statutes which do not contain a *mens rea* requirement. *See e.g. United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (affirming conviction for possession of unregistered hand grenades in the absence of requirement that defendant knew that the hand grenades were

unregistered); *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943) (upholding conviction for shipping adulterated or misbranded drugs where defendant "though consciousness of wrongdoing [was] totally wanting."). These statutes have been upheld where courts have found that the legislature was justified in concluding that public welfare concerns warrant the imposition of penalties in the absence of culpable intent. *See Morissette v. United States*, 342 U.S. 246, 255–256, 72 S.Ct. 240, 245–46, 96 L.Ed. 288 (1952). The Defendants argue that the instant statute is similar to the statutes at issue in *Freed* and *Dotterweich* because it lacks a *mens rea* requirement. However, Defendant claims this statute is unconstitutional because the supposed lack of a *mens rea* requirement is not adequately justified by public welfare considerations.

The Defendant's contention must fail because, unlike the statutes at issue in *Freed* and *Dotterweich*, the Money Laundering Control Act clearly contains a *mens rea* requirement. The Defendant may not be convicted under the statute unless the Government can prove that he intended to transport currency to a foreign country with knowledge that the currency which he allegedly attempted to transport constituted the proceeds of illegal activity *and* with knowledge that the transportation was designed to avoid a transaction reporting requirement. The statute simply does not punish the mere transportation of money without further knowledge. Accordingly, we need not reach the issue of the adequacy of the public welfare considerations behind the statute. The Defendant's analogy to strict liability offenses is inapposite.

Additionally Defendant argues that the statute impermissibly punishes an attempt to avoid a currency reporting requirement. This contention is simply untrue. The plain language of the statute does not punish an *attempt to avoid* a reporting requirement. Rather, the statute punishes an *attempt to transport* currency out of the country with knowledge that the transportation constitutes an attempt to avoid a reporting requirement. Thus, the

attempt to avoid language only concerns the scienter requirement which is a component of the offense involving attempted transportation. The statute manifestly does not punish a double inchoate offense as claimed by the Defendant. Therefore, the Defendant's reliance on *United States v. Meacham*, 626 F.2d 503 (5th Cir.1980) (invalidating a conviction for crime of "conspiracy to attempt" importation of marijuana), is completely misplaced.[4]

■■■ The Defendant has also argued at length that he may only be charged with a CMIR violation under 31 U.S.C. §§ 5316 and 5322 and may not properly be charged with and punished for a violation under 18 U.S.C. § 1956(a)(2) in combination with the CMIR count. We find this argument unavailing.

In *United States v. Woodward*, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985), the defendant was convicted of the offenses of failing to file a CMIR as required by regulations promulgated pursuant to 31 U.S.C. §§ 1058 and 1101[5] and making false statements to an agency of the United States in violation of 18 U.S.C. § 1001. Both of the charges stemmed from a single incident where the defendant was found to have falsely stated to customs agents that he was not carrying in excess of $5000 in currency into the United. In appealing his conviction, defendant contended that he could not be charged with both the false statement offense and the violation of the CMIR filing requirement.

In summarily rejecting the defendant's contention, the Court applied the rule of statutory construction contained in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The *Blockburger* rule provides that a defendant may be charged with and punished cumulatively under two separate statutes for the same conduct where "each provision re-

quires proof of a fact which the other does not." In applying this rule, the Court stated that

> proof of a currency reporting violation does *not* necessarily include proof of a false statement offense. Section 1001 proscribes the nondisclosure of a material fact only if the fact is "conceal[ed] by ... any *trick, scheme, or device.*" (Emphasis added.) A person could, without employing a "trick, scheme, or device," simply and willfully fail to file a currency disclosure report. A traveler who enters the country and passes through Customs prepared to answer questions truthfully, but is never asked whether he is carrying over $5,000 in currency, might nonetheless be subject to conviction under 31 U.S.C. § 1058 for willfully transporting money without filing the required currency report. However, because he did not conceal a material fact by means of a "trick, scheme or device," (and did not make any false statement) his conduct would not fall within 18 U.S.C. § 1001. *Id.* 469 U.S. at 108, 105 S.Ct. at 612 (footnotes omitted).

In addition to the application of the *Blockburger* rule, the Court pointed to two other factors which dictated the finding that the defendant could properly be charged with violating both statutes. First, "[t]here is no evidence ... that Congress did not intend to allow separate punishment for the two different offenses." *Id.* Second, the Court found that the statutes " 'are directed to separate evils.' " *Id.* at 109, 105 S.Ct. at 613 (*quoting Albernaz v. United States*, 450 U.S. 333, 340, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981)). In this regard, the Court wrote:

> The currency reporting statute was enacted to develop records that would "have a high degree of usefulness in criminal, tax, or regulatory investiga-

---

4. To the extent that the Defendant contends that the use of the term "avoid" within the statute is unconstitutionally vague we agree with the Court in *Kimball*, 711 F.Supp. at 1034, which specifically found that the use of that the term "to avoid a transaction reporting requirement under Federal Law" is not unconstitutionally vague.

5. Sections 1058 and 1101 have been recodified without substantive change as 31 U.S.C. §§ 5322(a) and 5316. *Woodward*, 469 U.S. at 106 n. 2, 105 S.Ct. at 611 n. 2. Sections 5322(a) and 5316 are the sections under which Ortiz has been charged in Count II of the Indictment.

tions." 31 U.S.C. § 1051. The false statement statute, on the other hand, was designed "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." *United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, [522] 85 L.Ed. 598 (1941). *Id.* 469 U.S. at 109, 105 S.Ct. at 613.

Application of the factors delineated in *Woodward* to the facts of the instant case compels the finding that the Government may properly charge Defendant Ortiz with both the CMIR count and the Money Laundering Control Act count. Application of the *Blockburger* rule clearly allows for the charging of both counts. Each provision requires proof of a fact which is not required under the other provision. There is no evidence that Congress did not intend to allow for separate punishment in cases where both CMIR violations and Money Laundering Act violations are charged. Moreover, the two statutes manifestly address separate evils.

■ It is clearly possible to violate the CMIR statute without simultaneously violating the Money Laundering Control Act. The regulation to which the CMIR statute is tied, 31 C.F.R. § 103.23(a), requires that a person who physically transports in excess of $10,000 in currency or other monetary instruments must make a report thereof.[6] The regulation requires that a report be filed whether the money being transported comes from a legitimate or illegitimate source. The transporter will have simultaneously violated the Money Laundering Control Act only if he has knowledge that the money comes from an illegal source. Therefore, proof of a violation of the Money Laundering Control Act requires proof of an element which is not

necessary for a violation of the CMIR statute.

■ Conversely, it is entirely possible to violate the Money Laundering Control Act without contemporaneously violating the CMIR statute. The Money Laundering Control Act applies to the transportation, *transmission* or *transfer* of *funds* or monetary instruments. On the other hand, 31 C.F.R. § 103.23(a) limits the CMIR reporting requirements to the *physical* transportation, mailing, or shipping of currency and *certain monetary instruments.* Accordingly, one who electronically transmits funds with knowledge that the funds are derived from illegal activity violates the Money Laundering Control Act but does not violate the CMIR statute. Thus, proof of a violation of the CMIR statute requires that the defendant engage in the physical transportation of currency—an element not required under the Money Laundering Control Act.

Turning to the other considerations set forth in *Woodward,* the legislative history of the Money Laundering Control Act squarely indicates that Congress intended that the Act address evils separate and distinct from those addressed by the CMIR statute. Moreover, there is absolutely no indication that Congress did not intend for the CMIR statute and the Money Laundering Control Act to be applied together. The CMIR statute "was enacted to develop records that would 'have a high degree of usefulness in criminal, tax, or regulatory investigations'" *Woodward,* 469 U.S. at 109, 105 S.Ct. at 613 (quoting 31 U.S.C. § 1051). At the time Congress enacted the Money Laundering Control Act, Congress made clear its intention that the Act narrowly address the problem of money laundering rather than the more general problems addressed by the CMIR requirement.

**6.** 31 CFR § 103.23(a) provides in its entirety: Each person who physically transports, mails, or ships, or causes to be physically transported, mailed, or shipped, or attempts to physically transport, mail or ship, or attempts to cause to be physically transported, mailed or shipped, currency or other monetary instruments in an aggregate amount exceeding $10,000 on any one

occasion from the United States to any place outside the United States, or into the United States, shall make a report thereof. A person is deemed to have caused such transportation, mailing or shipping when he aids, abets, counsels, commands, procures, or requests it to be done by a financial institution or any other person.

**1404**

The Senate Committee Report relating to § 1956 stated:

This section established the new Federal crime of money laundering at section 1956 of Title 18. Unlike the existing provisions of the Bank Secrecy Act in Title 31, which deals with the problem of money laundering indirectly (by requiring the filing of various reports and punishing the failure to do so), the new section 1956 directly proscribes certain types of transactions used to launder the funds derived from criminal activity. S.Rep. No. 433, 99th Cong., 2d Sess. at 9 (1986).

In our view, the Money Laundering Control Act was intended to address evils of a different nature than those primarily addressed by the CMIR statute. Moreover, the foregoing excerpt from the Senate Committee Report indicates that Congress was well aware that the Money Laundering Control Act would have significant interplay with the CMIR statute. However, "at no time did it suggest that the two statutes could not be applied together." *Woodward*, 469 U.S. at 109, 105 S.Ct. at 613.

In short, we find here that the operation of the Money Laundering Control Act is not void for vagueness as applied to the alleged actions of the Defendant. Moreover, the Defendant may be properly charged with violations of both the CMIR statute and the Money Laundering Control Act. Accordingly, Defendant's Motion to Dismiss Count One of the Indictment is DENIED.

DONE AND ORDERED.