920 F.2d 934
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stephen M. PIERCE, Defendant-Appellant.
 No. 90-1455.
 United States Court of Appeals, Sixth Circuit.
 Dec. 13, 1990.
 
 Before KRUPANSKY and MILBURN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Stephen Pierce appeals the district court's judgment of conviction and sentence for structuring financial transactions to avoid the filing of currency transaction reports ("CTRs"), 31 U.S.C. Sec. 5324(3), and causing or attempting to cause financial institutions to fail to file CTRs, 31 U.S.C. Sec. 5324(1). For the reasons that follow, we affirm.
 
 I.
 A. Procedural History
 
 2
 On June 22, 1989, a federal grand jury in the Eastern District of Michigan, Southern Division, returned a two-count indictment charging defendant with violations of 31 U.S.C. Sec. 5324. Count I of the indictment charged defendant with violating 31 U.S.C. Sec. 5324(3) by structuring financial transactions to avoid the filing of currency transaction reports, and Count II charged defendant with violating 31 U.S.C. Sec. 5324(1) by causing or attempting to cause financial institutions to fail to file currency transaction reports.
 
 
 3
 On August 2, 1989, defendant filed a motion to enjoin potentially prejudicial government testimony concerning drugs, money laundering, and "smurfing"[1] and a motion to dismiss "erroneous surplusage" in Count I of the indictment. Specifically, defendant alleged that the final paragraph of Count I was surplusage. On August 14, 1989, defendant filed a motion to hold 31 U.S.C. Sec. 5324 unconstitutional. A supplemental motion and brief to hold unconstitutional 31 U.S.C. Sec. 5324 was filed by defendant on August 18, 1989.
 
 
 4
 On August 31, 1989, the district judge entered an order denying defendant's motion to enjoin government testimony concerning drugs, money laundering, and smurfing. On October 5, 1989, the district judge entered an order denying defendant's motion attacking the constitutionality of 31 U.S.C. Sec. 5324 and denying defendant's motion to strike the final paragraph of Count I of the indictment as surplusage.
 
 
 5
 On October 17, 1989, defendant filed a second motion to enjoin all testimony/evidence concerning drugs, money laundering, smurfing, and "drug smuggling airplanes" based on newly developed evidence. On November 9, 1989, the district court denied this motion. On December 11, 1989, the defendant filed a motion to prevent any testimony concerning "money laundering" and this motion was granted on December 12, 1989.
 
 
 6
 Defendant's jury trial began on December 14, 1989, and concluded on December 19, 1989, with the jury finding defendant guilty on both counts. On April 11, 1990, the district court entered its judgment and sentence, wherein defendant was sentenced to fifteen months on each count with the sentences to be served concurrently. This timely appeal followed.
 
 B. Statement of Facts
 
 7
 Defendant's troubles began when he met a man named "Al" in a bar and, in exchange for $1,500, agreed to purchase cashier's checks made out to one Bill Foote. Al told defendant Pierce that he wanted to purchase the cashier's checks in order to avoid having the IRS know the source of the money and to avoid paying taxes on it.
 
 
 8
 The evidence at trial was that on September 8, 1988, defendant purchased a total of twelve checks (cashier's checks and money orders) in Michigan, totaling $55,500. Al drove defendant to five different cities and to eleven branches of six different banks. Defendant purchased all twelve checks with cash. Defendant was photographed at two of the branches where he purchased checks. Three bank tellers identified defendant as the person who purchased, or attempted to purchase, cashier's checks in the amount of $5,000 on September 8, 1988. Additionally, defendant signed five applications for cashier's checks.
 
 
 9
 During the carrying out of this scheme, defendant tried to avoid having CTRs filed regarding his transactions. At the Heritage Federal Savings Bank in Taylor, Michigan, defendant attempted to purchase a $10,000 cashier's check, but was told that he would have to fill out a CTR for the IRS in order to complete a transaction of $10,000 or more. Consequently, defendant purchased only a $5,000 cashier's check. At Wyandotte Savings Bank in Taylor, Michigan, defendant was told that he would have to complete a CTR for a $5,000 money order he wished to purchase. Defendant refused to fill out a CTR, and the bank refused to carry out the transaction.
 
 
 10
 A few days later, in mid-September, the scheme that defendant was involved in began to unravel when Thomas Cattell, a California resident, received $55,500 in money orders and cashier's checks. All were dated September 8, 1988, and listed defendant as purchaser and Bill Foote as the payee. Cattell testified that the checks came in a Federal Express envelope which contained an unstamped envelope addressed to Bernard Cam, Cam Aircraft Services, Keystone Heights, Florida. This unstamped envelope had the return address of "Pierce," 15307 Flanders, Southgate, Michigan. The checks were to be payment for an airplane that Cattell was trying to sell. Cattell testified that he had been called about the purchase of the plane by Bernard Cam, who resided in Florida and who said he was acting for defendant.
 
 
 11
 Cattell became suspicious and turned the checks over to the San Luis Obispo, California, Narcotics Task Force which in turn contacted the Detroit office of the Drug Enforcement Administration (DEA). Thereafter, Detroit DEA Agent Gary Boggs arrested defendant. Following his arrest, defendant made incriminating statements to Boggs and to an IRS agent. Defendant also signed a "Disclaimer of Ownership Currency Form" in which he stated:
 
 
 12
 The currecy [sic] never actualy [sic] came into my possession (in full) only small amounts at a time. It was handed to me before entering a bank by a guy name [sic] "Al."
 
 
 13
 In this appeal defendant argues (1) that the statute at issue, 31 U.S.C. Sec. 5324, is unconstitutional because it fails to provide adequate notice of the conduct criminalized, since it does not define the critical terms "evading," "transaction" and "structure"; (2) that 31 U.S.C. Sec. 5324 is unconstitutional because it lacks a necessary mens rea requirement; (3) that he was deprived of his right to a fair trial because the district judge permitted testimony concerning drugs and smurfing; (4) that the district judge erred in not striking the final paragraph of Count I of the indictment because it was "prejudicial" and "erroneous"; (5) that 31 U.S.C. Sec. 5324 violates his Fourth Amendment right to privacy; and (6) that 31 U.S.C. Sec. 5324 violates his Fifth Amendment privilege against self-incrimination.
 
 II.
 A.
 
 14
 Defendant's first argument is that 31 U.S.C. Sec. 5324 is unconstitutional because it is vague and overbroad. Since determination of this issue involves a question of law, it is subject to de novo review. See Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989).
 
 
 15
 "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). In Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95 (1982), the Court stated:
 
 
 16
 In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.
 
 
 17
 The statute that defendant challenges as unconstitutionally vague and overbroad, 31 U.S.C. Sec. 5324, provides:
 
 
 18
 Structuring transactions to evade reporting requirement prohibited
 
 
 19
 No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction--
 
 
 20
 (1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a);
 
 
 21
 (2) cause or attempt to cause a domestic financial institution to file a report required under section 5313(a) that contains a material omission or misstatement of fact; or
 
 
 22
 (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.
 
 
 23
 (Emphasis added).
 
 
 24
 Defendant initially argues that the terms "structure," "transaction," and "evading" are not defined in the statute and are unconstitutionally vague. As it was pointed out in LaFrance, "the term 'structuring' has a plain meaning, easily understood." 729 F.Supp. at 8. "The term 'structure,' as it relates to an individual's conduct of a currency transaction, very simply refers to the manner in which the transaction is effected." Scanio, 705 F.Supp. at 776. "The use of the word 'structure' adds no mystifying element to the crime; indeed the choice of the term structure reveals an intent to focus on the 'organized' nature of the currency transaction thus providing a slightly more limiting interpretation of the crime than the use of the word transact might permit." Id.
 
 
 25
 Not only does the term "structure" have a straightforward and unambiguous meaning in the context of the statute, but also "any generality of the term 'structure' is restricted by the implied scienter requirement of Section 5324(3) as well as the specific scienter requirement of a related statute, 31 U.S.C. Sec. 5322." LaFrance, 729 F.Supp. at 8. The Supreme Court has recognized "that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." Hoffman Estates, 455 U.S. at 499.
 
 
 26
 The use of the term "transaction" within the statute does not render the statute unconstitutionally vague. Although "transaction" is not defined in the statute, "transaction in currency" was defined prior to the date of defendant's crime in 31 C.F.R. Sec. 103.11(o) (1988) as a "transaction involving the physical transfer of currency from one person to another." When viewed in the context of the statute in question, we find nothing vague about the use of the word "transaction." Additionally, we note that this is a situation where defendant has engaged in conduct which was "clearly proscribed" by the statute, and we do not believe that there can be any doubt concerning the meaning of the word "transaction" in relation to the defendant's conduct. See Hoffman Estates, 455 U.S. at 94-95.
 
 
 27
 Regarding the word "evading," defendant attempts to analogize, without citing any authority, the meaning of this word as it appears in 31 U.S.C. Sec. 5324 to its meaning as commonly understood in tax law. Defendant argues that the statute at hand is unconstitutionally vague because it does not recognize the distinction between avoidance and evasion as those words are used in tax law. Defendant's attempt to analogize the meaning of "evading" as found in section 5324 with the meaning of that word in tax law is unfounded. See United States v. Thompson, 603 F.2d 1200, 1203 (5th Cir.1979) (tax analogy is inapposite in bank reporting cases). It is clear from a plain reading of the statute what conduct is proscribed by the use of the word "evading." In this connection, we view the statute in light of the fact that defendant acted with some level of scienter, and we consider the fact that defendant was engaged in conduct that was clearly proscribed by the statute. See Hoffman Estates, 455 U.S. at 498-99.
 
 
 28
 Defendant argues that the statute is overbroad because it does not contain any time limitations within which the alleged structuring must occur and because it contains no requirement that the alleged "structurer" actually possess or have accumulated at the time of the first deposit a reportable sum which is then broken down. We are convinced that neither of these arguments would have any mitigating applicability to the defendant's conduct in this case. Without considering whether or not these hypothetical circumstances might render the statute overbroad in other contexts, Hoffman makes it clear that because the defendant here has engaged in conduct that is clearly proscribed, he cannot complain of the vagueness of the law as applied to the conduct of others.
 
 
 29
 Finally, we note that three courts have upheld the constitutionality of 31 U.S.C. Sec. 5324 against vagueness challenges. United States v. Hoyland, 903 F.2d 1288, 1292 (9th Cir.1990); United States v. LaFrance, 729 F.Supp. 7, 8 (D.Mass.1989); United States v. Scanio, 705 F.Supp. 768, 773-78 (W.D.N.Y.1988). We agree, and hold that the statute is not unconstitutionally vague or overbroad.
 
 B.
 
 30
 Defendant's second argument is that 31 U.S.C. Sec. 5324 is unconstitutional because it does not contain a mens rea requirement, and the government should have had to prove that defendant was aware that his conduct was in violation of a specific criminal law dealing with financial activity. Pursuant to 31 U.S.C. Sec. 5322, a person who "willfully" violates section 5324 is subject to criminal prosecution. Therefore, defendant's argument must be that the term "willfully" means, in relation to section 5324, that he must have acted with specific knowledge of the law's existence. This argument is inconsistent with the generally accepted legal definition of the term "willfully" and with the intent of Congress in enacting section 5322.[2]
 
 
 31
 The "requirement that an act be done willfully normally does not necessitate proof that the defendant was specifically aware of the law penalizing his conduct." United States v. Scanio, 900 F.2d 485, 489 (2d Cir.1990) (citing American Surety Co. v. Sullivan, 7 F.2d 605, 606 (2d Cir.1925)); United States v. Gregg, 612 F.2d 43, 51 (2d Cir.1979). Additionally, "[w]ith respect to the applicable mens rea, the legislative history [of section 5324] indicates that Congress only intended to require proof that the defendant structured a currency transaction in order to prevent ... filing a CTR." Scanio, 900 F.2d at 491. The defendant's argument that the statute is unconstitutional is without merit because the statute does in fact clearly contain a mens rea requirement. Further, the statute does not require the government to prove that defendant acted with specific intent.
 
 C.
 
 32
 The third argument advanced by defendant is that he was deprived of his right to a fair trial because the district court permitted testimony concerning drugs and smurfing. Although the government did not refer to narcotics or to drugs during its opening, closing or rebuttal arguments, there were references to drugs and narcotics during the voir dire of the jury. However, at oral argument counsel for the defendant-appellant conceded that it was he who initiated the questions concerning drugs that were asked on voir dire.
 
 
 33
 At the trial the testimony concerning drugs was limited to identifying witness Boggs as a DEA agent, Thomas Cattell's statement that he signed an authorization to allow the narcotics task force to withdraw the amount of the checks in question from his account, and defendant's admissions in the Disclaimer of Ownership of Currency form which makes two references to the San Luis Obispo County Narcotics Task Force. "Smurfing" was referred to only twice during the course of the trial. This evidence was relevant for the purpose of providing a context for such matters as the circumstances of defendant's arrest and the identification of the government's witnesses, and its prejudicial impact was minimal.
 
 
 34
 We review the decision of the district court not to enjoin the testimony concerning drugs and smurfing under the abuse of discretion standard. See Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1218 (6th Cir.1987). "In the context of an evidentiary ruling, abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 157 (6th Cir.1988). Under the facts of this case, we hold that the district court did not abuse its discretion in denying defendant's motions to enjoin testimony regarding drugs and/or narcotics.
 
 
 35
 Any prejudice to the defendant as a result of the references to drugs and/or narcotics during the trial was harmless beyond a reasonable doubt, because the evidence against defendant in this case was overwhelming. Defendant was photographed at two of the banks where he sought to carry out transactions, and those photographs were introduced into evidence and viewed by the jury. Additionally, three bank tellers identified defendant at the trial as the man who had carried out transactions at their respective banks, and two tellers testified that defendant was reluctant to have CTRs recorded.
 
 
 36
 Moreover, defendant seriously incriminated himself following his arrest. The "Disclaimer of Ownership of Currency" form filled out by defendant was a virtual confession. Furthermore, DEA Agent Boggs testified that defendant had admitted to him that he had gone to approximately twelve to fourteen banks on September 8, 1988. Additionally, IRS Agent Tazar testified that after he explained to defendant what "smurfing" was, defendant admitted that he had committed the violation of smurfing. These matters were not denied by defendant on either direct or cross-examination. Additionally, samples of defendant's handwriting were introduced into evidence along with checks from different banks which had defendant's signature on them. Finally, during both voir dire and the charge to the jury, the district judge instructed the jury that defendant could not be held guilty for any crime for which he was not charged in the indictment. In contrast to the substantial amount of proof evidence presented by the government, the defense offered only two witnesses, and the testimony of each was brief and largely irrelevant.
 
 
 37
 We also hold that the district court did not abuse its discretion in denying defendant's motion to enjoin testimony concerning smurfing. The defendant argues that the word "smurfing" is generally known to describe drug money laundering activity. However, the word "smurfing" was mentioned only two times during the trial, and the government never attempted to associate the word with drugs or drug money laundering. The word "smurf" is derived from a cartoon character popular among children, and common experience would indicate that the great majority of society has no idea that the word might, in some contexts, be connected to drug money laundering activity.
 
 D.
 
 38
 The fourth argument advanced by defendant is that the district judge erred in not deleting the "prejudicial erroneous surplusage" in the final paragraph of Count I of the indictment. "The striking of language from an indictment as being surplusage addresses itself to the sound discretion of the district court." United States v. Kemper, 503 F.2d 327, 329 (6th Cir.1974) (citing Dranow v. United States, 307 F.2d 545, 558 (8th Cir.1962)), cert. denied, 419 U.S. 1124 (1975). Therefore, we review the district court's decision in this regard under the abuse of discretion standard. See id. "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." United States. v. Thomas, 875 F.2d 559, 562 n. 2 (6th Cir.) (quoting United States v. Climatemp, Inc., 482 F.Supp. 376, 391 (N.D.Ill.1979)), cert. denied, 110 S.Ct. 189 (1989).
 
 
 39
 We hold that defendant's arguments relating to this issue are without merit and that the district court did not abuse its discretion in denying defendant's motion to delete the final paragraph of Count I of the indictment. Defendant's argument that the phrase in the indictment, "amounts of less than $10,000," is erroneous and that the statute only covers transactions of more than $10,000, indicates a total misunderstanding of the statute at issue, 31 U.S.C. Sec. 5324(3). Section 5324(3) imposes criminal liability for "evading" the reporting requirements of section 5313 by "structuring" transactions. "Structured" transactions may involve amounts of less than $10,000, and, therefore, section 5324(3) can cover amounts either greater or less than $10,000. Furthermore, the government proved at trial exactly what it set forth in the final paragraph of Count I of the indictment, and, therefore, it cannot be considered surplusage. See Thomas, 875 F.2d at 562 n. 2.
 
 E.
 
 40
 Defendant next argues that 31 U.S.C. Secs. 5324 and 5313 violate his Fourth Amendment right to privacy because they compel reporting to the government of financial transactions. We need go no further than the Supreme Court's decision in California Bankers Association v. Shultz, 416 U.S. 21 (1974), and United States v. Miller, 425 U.S. 435 (1976), in addressing this argument. In both cases, the Bank Secrecy Act was upheld against Fourth Amendment challenges. Although neither of those cases is directly on point because defendant is challenging different provisions of the Act, we find the reasoning of those cases to be dispositive as to this issue, and we hold that neither section 5324 nor section 5313 violates defendant's Fourth Amendment rights. In United States v. Miller, the Court stated:
 
 
 41
 The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.
 
 
 42
 425 U.S. at 443; see also United States v. Sanchez Vazquez, 585 F.Supp. 990, 995-96 (N.D.Ga.1984) (holding that section 5313 did not violate the Fourth Amendment).
 
 F.
 
 43
 Defendant's final argument is that 31 U.S.C. Sec. 5324 violates his Fifth Amendment privilege against self-incrimination.[3] More specifically, defendant relies on Marchetti v. United States, 390 U.S. 39 (1968), and argues that sections 5313 and 5324 constitute a "governmental scheme" by which the government, through "ingeniously drawn legislation," compels individuals to supply incriminating information. In assessing the defendant's Fifth Amendment claim, we look to several factors.
 
 
 44
 First, does the reporting requirement involve an area "permeated with criminal statutes ...." Second, is the requirement aimed at "a highly selective group inherently suspect of criminal activities," or at the public generally. Finally, would compliance with the requirement force an individual to provide information that "would surely prove a significant 'link in a chain' of evidence tending to establish his guilt."
 
 
 45
 United States v. Des Jardins, 747 F.2d 499, 508 (9th Cir.1984) (citations omitted).
 
 
 46
 If application of these factors results in the conclusion that the statute creates "substantial hazards of self-incrimination," then a balancing test is applied weighing the public need for disclosure against the individual's Fifth Amendment right. See Des Jardins, 747 F.2d at 508.
 
 
 47
 Applying these legal principles to the present case, we conclude that the reporting statutes at issue do not present a danger of incrimination which would be violative of the Fifth Amendment. The reporting requirements are not aimed at a highly selective group inherently suspect of criminal activity because "the great majority of those who make such deposits are not connected with criminal activity." United States v. Kimball, 711 F.Supp. 1031, 1033 (D.Nev.1989). See also United States v. Sanchez Vazquez, 585 F.Supp. 990, 996 (N.D.Ga.1984); cf. United States v. Dichne, 612 F.2d 632, 639 (2d Cir.1979) (the purpose of domestic financial reporting requirement of 31 U.S.C. Sec. 1101 was not directed at inherently suspect group), cert. denied, 445 U.S. 928 (1980).
 
 
 48
 We note that the reporting statutes at issue in this case do not exist in an "area permeated with criminal statutes," Kimball, 711 F.Supp. at 1032, and there is no "direct linkage" to criminal activity so as to pose a substantial risk of incrimination. See Kimball, 711 F.Supp. at 1033. Moreover, the government's need for a reporting statute of this type outweighs the minimal risk of incrimination presented. See Dichne, 612 F.2d at 634-41.
 
 III.
 
 49
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 "Smurfs" are television cartoon characters who move quickly from place to place. "Smurfing" refers to schemes designed to evade the filing of CTRs
 
 
 [2]
 We also note that, as to both counts charged in the indictment, the district judge instructed the jury that the government had to prove beyond a reasonable doubt that "the defendant had actual knowledge of the currency transaction reporting requirements." Additionally, the district judge instructed the jury that the crime charged required proof of specific intent and defined specific intent for the jury
 
 
 [3]
 We construe defendant's argument also to include an attack on the constitutionality of the reporting requirements of 31 U.S.C. Sec. 5313